## CHARLESTON.

C. R. McCoy et al v. Emma Ward et al.

Submitted March 6, 1923.    Decided March 13, 1923.

1.  WILLS—Date When Remainder After Life Estate in Real Estate
    Vested Held Date Youngest Child Attained Majority.

    Where in disposing of his home farm and all other real
    estate which he might thereafter acquire and not disposed of
    in his lifetime, the testator gave to his wife by a second mar-
    riage the use of one full fair third thereof during her natural
    life, being the interest therein which by law she would be
    entitled to, and in addition thereto the use and control of the
    remaining two thirds thereof until the youngest of their
    three infant children, Edna, Jessie and Ray, should reach the
    age of twenty-one, when said two-thirds and the remainder in
    the other third after the wife's life estate therein should
    terminate should descend to and be equally divided among the
    said three children or the legal heirs of such of them as may
    have died, "meaning thereby to give to Edna one-third if
    living, if not to her legal heirs, to Jessie if living one-third,
    if not to her legal heirs, and to Ray one-third if living, if not
    to his legal heirs," and further providing, "that having ad-
    vanced the children of my first wife, the legal heirs of either
    of said three children who may die as used in this devise
    shall be restricted to those of the direct or full blood and shall
    not include those of the collateral or half blood," the time of
    which by the terms thereof the vesting of the estate in the
    said three children or their heirs referred was the date when
    the youngest should reach his majority, and the legal heirs
    of the ones who would take under the will were the heirs
    of said children as might die before the youngest child
    should reach his or her majority. (p. 342).

2.  DESCENT AND DISTRIBUTION—Estate Vested in Remaindermen
    After Life Estate Held to Descend by Law of Descent and
    Distribution Regardless of Limitation in Devise to Heirs of
    the Full Blood.

    After the estate so devised became thus vested in said de-
    visees as contemplated by the will the share of each devisee
    if dying intestate would pass to his or her respective heirs
    according to the law of descents and distributions regardless
    of the proviso in the will limiting the devise before the time
    to the heirs of the full blood. (p. 342).

Certified Questions from the Circuit Court, Barbour County.

Suit by C. R. McCoy and others against Emma Ward and others. On certified questions on order overruling demurrer to defendant's answer.

*Ruling affirmed.*

*J. Blackburn Ware,* for plaintiffs.
*S. V. Woods,* for defendants.

Miller, President:

The questions certified for decision involve the true construction of the last will and testament of Aquilla J. Ward, made on January 2, 1897, and are presented by the demurrer of some of the defendants to the bill of complaint, and the action of the circuit court thereon overruling said demurrer and ruling defendants to answer.

The object of the bill, besides the construction of the will, was to have an accounting by the widow, a second wife, and her children or the heirs of the full blood, of the rents, issues and profits of the lands devised and of land and personal estate devised by the will, and for a partition of the land and personal estate in accordance with the terms of the will and the legal rights of the parties.

Plaintiff's rights, if any they have in the estate and property sought to be divided, were acquired by them under certain deeds recently made and executed to them by certain of the children or heirs and assigns of the said testator by the first wife, who, it is contended on behalf of demurrants, were intended to be and were in fact excluded from participation in the property sought to have divided by the very terms and provisions of the will, being therein designated as heirs of the half blood and not of the whole blood.

Having devised all of his personal estate, in accordance with the same general plan, the testator by the fourth clause thereof provided as follows:

"Fourth:—I have heretofore advanced in money and real estate all the children of mine by my first

wife so that I now have remaining my home farm of from 180 to 200 acres on Second Big Run in Barbour County, where I now reside and which is composed of three different adjoining tracts acquired by me from Johnson Ward, George Skidmore and James Ward, and I now will and devise said and any and all other real estate which I may hereafter acquire and not dispose of in my lifetime, as follows: that is to say, my beloved wife, Emma is to have the use of one full fair third thereof for and during her natural life being the interest which by law she would be entitled to and in addition she is to have the full use and control of the other two thirds of said real estate until the youngest of said three children, Edna, Jessie and Ray, living, shall have reached the age of twenty-one years when said two thirds and the remainder in the other third after my wife's life estate terminates is to descend to and be equally divided between said three children Edna, Jessie and Ray Ward or the legal heirs of such of them as may have died meaning hereby to give to Edna one third if living, if not to her legal heirs, to Jessie if living one third if not to her legal heirs and to Ray, one third if living if not to his legal heirs.

And the use of the whole of said farm and other real estate until the youngest of my said children becomes twenty one is given to my wife to better enable her to rear and educate said children equally dear to both of us. But it is hereby expressly provided that having advanced the children of my first wife, the legal heirs of either of said three who may die as used in this devise shall be restricted to those of the direct or full blood and shall not include those of the collateral or half blood.''

The bill alleges and the record shows, that the testator died in 1909, and that his will was duly probated April 26, 1909; that he left surviving him his widow, Emma Ward, and his three children, Edna, Jessie and Ray, who were his special beneficiaries and devisees under the will; and that there also survived him Taylor Ward, Rebecca Crouso, Matilda White, Barbara Smith Lane and Mary Jane McCoy, his children by his first wife; and that he was also survived by the children of his son Ira Ward, deceased, a son by his first wife, who died before the testator, leaving surviving him

Georgie White, Minnie Carrocoff, Frank Ward, Daisy Stewart, Mattie Johnson, Bessie Lewis and Gay Ward, who afterwards departed this life, leaving surviving her Neva Wood, an infant, and Ward Wood, an infant, as heirs at law.

It is further alleged that the said Edna Ward, Jessie Ward and Ray Ward were each living at the death of the testator, and that they all reached the age of twenty one years before any of them departed this life; that the said Ray Ward was *non compos mentis* and was never married; that the said Edna Ward intermarried with Doy Jack; that Jessie Ward intermarried with Benjamin H. Buskirk; that long after reaching her majority and marrying, the said Edna Ward departed this life without issue, leaving surviving her, her husband, her mother and her brothers and sisters; and that the said Ray Ward departed this life, leaving surviving him, besides his mother and sister Jessie Buskirk, his half brothers and sisters.

A correct analysis of the will suggested by counsel, or rather of the fourth clause thereof, is as follows:

"(a)  That the testator had advanced money and real estate to all of his children by his first wife.

(b)  That he had his home farm of from 180 to 200 acres remaining.

(c)  That he devised said home farm and all other real estate which he might have at the time of his death, as follows:  (1)  To his wife, one third thereof during her life. (2) To his wife the use and full control of the other two thirds of said real estate until the youngest of his three children, Edna, Jessie and Ray, living, shall have reached the age of 21 years. (3)  When the youngest of said three children became 21 years of age then said two thirds and the remainder in the other third, after the life estate of his wife terminated, was to descend to and be equally divided between said three children, Edna, Jessie and Ray Ward, if living, or if any of them died before the youngest reached 21 years of age, then to the legal heirs of such as had died, with the following explanation:—(a)  One third to Edna, if living; it not, to her legal heirs.  (b)  One third to Jessie, if living; if not, to her

legal heirs. (c) One third to Ray, if living; if not, to his legal heirs. (d) The legal heirs of either of said three children, who may die, *as used in this devise,* shall be restricted to those of the direct or full blood, and shall not include those of the collateral or half blood."

It is agreed that the controlling question is: When did the testator intend the estate so devised to become vested? On behalf of plaintiff it is contended that the estate became vested in the three children, Edna, Jessie and Ray, when the youngest became twenty one years of age, and when, it is contended, each of the devisees became vested with a full fee simple estate, and beyond which time it was not intended by the testator to control the devolution of the property; that the limitation to the direct or full blood and excluding those of the collateral or half blood, by proper construction of the will was to be applied only in the event, which never happened, that the said three divisees or one of them should die before the estate should become fully vested in them, and before the youngest arrived at his or her majority, subject of course to the life estate of the widow in one third of the property.

We need not inquire into the nature of the estate, whether vested or contingent, in the three children, after the death of the testator, for the event upon which these devisees were to become fully vested in the estate devised to them, namely, the majority of the youngest of the three, happened before either of them died, and we are of opinion that by proper construction the testator did not intend by the will to control the devolution of his estate beyond the time when the youngest of the three devisees should reach his majority, and that the construction placed on the will by counsel for plaintiffs and by the court below is the true one, and that this construction accords with the intention of the testator; for speaking as of that time, namely, when the youngest should reach his majority, the testator says that if any of the devisees shall die before reaching that age, his or her share of the estate shall descend to his or her heirs of the full blood. "Conditions may be annexed to estates of any duration,

whether for years, for life or in fee." *Stewart* v. *Workman,* 85 W. Va. 695.

In so disposing of his estate by the fourth clause of his will, the testator did not annex any condition or conditions of defeasance of the estate or estates to become vested on the happening of the event contemplated, namely the majority of the youngest child; so that in interpreting his will by the terms employed and by holding it up by its four corners, we must say that he intended by the devise to invest his three children with a full fee simple estate, conditioned only on the youngest reaching his majority; and certainly, as argued by counsel, after that event and the full vesting of his estate, each was entitled to dispose of his or her estate by deed, will or otherwise. Such being the true interpretation of the will the limitation to the heirs of the full blood necessarily had reference to the heirs of the one or more of the devisees who should die before the event when the estate should have become fully vested, and not afterwards. Every provision of this clause of the will, if not of every other provision thereof, plainly points to the time when the youngest should reach his majority, as the time when the vesting of the estate was to take place.

One of the cardinal rules of interpreting a will is that it should be construed so as to give effect to the provisions thereof, if this be possible without violating any provision of law or of public policy. 28 R. C. L. 206, § 167. If in this case it would have been necessary to construe the will as an effort on the part of the testator to control devolution of the estate beyond the majority of the youngest taker, it would have violated the rule against perpetuities; for as no one can be said to have heirs until he has died, the vesting of the estate might have been postponed beyond the life of the first taker and twenty one years and ten months thereafter; and it is held that if by any chance or circumstance such might be the result, the will would be void. *McCreery* v. *Johnston,* 90 W. Va. 80; *Prichard* v. *Prichard,* 91 W. Va. 398.

Such being our view of the law, our conclusion is to affirm the ruling of the circuit court on the questions certified.

*Ruling affirmed.*