DAVIS TRUST COMPANY, *Trustee, et al. v.* DAVIS ELKINS *et al.*

(Nos. 7792 and 7792-A)

Submitted February 13, 1934. Decided March 27, 1934.
(Rehearing Denied June 12, 1934)

LITZ, JUDGE, dissenting.

*Marshall & Forrer, Steptoe & Johnson* and *Stanley C. Morris,* for appellant National Savings & Trust Co.

*Le Roy See, Steptoe & Johnson* and *Haymond Maxwell, Jr.,* for appellant Stephen B. Elkins, III.

*Price, Smith & Spilman* and *R. S. Spilman, Jr.,* for appellee Katherine Elkins Hitt.

*S. T. Spears* and *Ira E. Robinson,* for appellee Davis Elkins.

WOODS, PRESIDENT:

This is a suit by the surviving executors of the last will and testament of Henry G. Davis, deceased, and the trustee under paragraph XV thereof, against parties who, as descendants of Hallie D. Elkins, now deceased, one of the initial beneficiaries under said paragraph, may be interested in said bequest. Construction of said paragraph XV is sought to the end that certain disbursements thereunder may be properly made. The paragraph reads as follows:

> "XV. In order that my children, Hallie D. Elkins, Grace Davis Lee, and John T. Davis, may have an assured income during their lives, and that some provisions may be made for those dependent upon them at their death, I give, devise and bequeath to the Davis Trust Company, One Million Five Hundred Thousand Dollars to be held by it in trust for my aforesaid children in equal proportions, that is to say, Five Hundred Thousand Dollars for each, the revenue therefrom to be paid to them semi-annually during their lives; and at the death of any of my said children, I give and bequeath his or her share in

equal proportions, to his or her children, the income or revenue therefrom to be devoted to their welfare until they respectively reach the age of twenty-five years when they are to receive from my estate their share of the principal of the fund; but if any of my said children leaves no children nor child then his or her share is to go to his or her legal heirs. The intent of the foregoing provision is that a portion of my estate shall be held in trust so that it cannot be spent, sold or given away by my said children, and they, therefore, shall have no power to sell, transfer, or in any way dispose of their interest in said trust fund, or of the income or proceeds thereof, in advance of receiving the same. The trust fund of One Million Five Hundred Thousand Dollars for which provision is hereby made may consist of Coal and Coke Railway Company bonds, or other bonds, stocks or other property, at a fair valuation, as my Executors may determine, and is to be managed and its accounts kept under their direction by the Davis Trust Company.''

Doubt having arisen as to the rights, if any, of Stephen B. Elkins, III, to share in the above trust, by reason of the relationship indicated in the following chart,

Henry G. Davis

the plaintiffs sought the advice of a court of equity as to whether the Elkins portion of said trust fund should be distributed (1) in whole to Davis Elkins and Katherine Elkins Hitt, the only surviving children of Hallie D. Elkins; (2) to Davis Elkins, Katherine Elkins Hitt and Stephen B. Elkins, III, or (3) five ways, that is, one-fifth to Davis Elkins, one-fifth to Katherine Elkins Hitt, one-fifth to the heirs or beneficiaries under the will of Blaine Elkins (father of Stephen B. Elkins, III), one-fifth to the heirs or beneficiaries under the will of Richard Elkins, and one-fifth to the heirs and beneficiaries under the will of Stephen B. Elkins, Jr.

The following salient facts may be stated before we proceed to a discussion of the foregoing questions. Henry G. Davis executed his will on August 24, 1915, and he died in March the following year. His will was probated on March 15, 1916. At the time of the execution of the will he had three living children, Hallie D. Elkins, Grace Davis Lee and John T. Davis. Mrs. Elkins had then living five children, all of whom were more than twenty-five years of age. Mrs. Lee had four living children, all of whom were under twenty-five years of age. Mrs. Lee has since died and her part of the estate has been duly distributed. John T. Davis is still living and his interests are not here involved. Hallie D. Elkins died in March, 1933, and the construction herein requested pertains only to the trust estate left to her by her father. As stated, at the time of the death of her father, and of the execution of his will, she had living five children, Davis, Stephen B., Jr., Richard, Blaine and Katherine Elkins Hitt. Prior to Mrs. Elkins' death, three of her sons had died. Richard and Stephen B., Jr., died without issue and Blaine left one son, the said Stephen B. Elkins, III, now seventeen years of age. All three left wills, Stephen B. Elkins, Jr., leaving all his property to Davis Elkins, and Richard leaving his property to his three brothers and sister. Blaine left his property to his wife and son.

The will under consideration was admittedly drawn by an able attorney. The testator was a man of education and intelligence. He had long and varied experience in business affairs. He served his state and nation in a political office of high rank. Inasmuch as each case must be governed by

its own particular facts and circumstances, but little aid can be derived in the construction of wills from adjudged cases. *Cole* v. *Cole*, 79 Va. 251. It has, therefore, been well said, that it may be doubted if any other source of enlightenment in the construction of a will is of much assistance, than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by language used by him. We realize that it is the duty of the court to construe the will which the testator has made and not to speculate as to his intention or to make a will for him. *Harris* v. *Neal*, 61 W. Va. 1, 55 S. E. 740. In the interpretation of a will the court will adopt such a construction as will give effect to every part of an instrument and thus avoid declaring any provisions which it may contain to be repugnant to others, provided some effect can be given not inconsistent with the general intent gathered from the whole will. *Hooe* v. *Hooe*, 13 Gratt. 245. Courts are never bound to give a strict and literal interpretation to the words used, and by adhering to the latter, defeat the manifest object and design of the testator. *Jones* v. *Brown*, 151 Va. 622, 144 S. E. 620. It is not the policy of the law to seek grounds for avoiding devises and bequests, but rather to deal with both so as to uphold and enforce them if it can be done consistently with the rules of the law. *McCoy* v. *Ward*, 93 W. Va. 338, 116 S. E. 526. Chief Justice Marshall, in *Finley* v. *King*, 3 Pet. 346, said: ''The intent of the testator is the cardinal rule in the construction of wills, and, if that intent can be clearly conceived and is not contrary to some positive rule of law, it must prevail.'' So, ''the sole purpose of the court in construing a will is to ascertain the intention of the testator as the same appears from a full and complete consideration of the entire will.'' I Page on Wills (2d Ed.) 1366. Therefore, intention is the life of a will, and when clear and violates no rule of law, it must govern with absolute sway. *Cresap* v. *Cresap*, 34 W. Va. 310, 12 S. E. 527. Or, it is sometimes said, the testator's intention must be ascertained from the four corners of the will.

The testator here had a vast estate. There were many demands upon his bounty. Being a man interested in his fellows he had contributed to the support of numerous institu-

tions of his country. He made contributions to them by his will also. His demands were many. His desires were large. They may be said to have been patriarchal in design. He loved his family and its various divisions.

The learned chancellor below held that the said trust fund should be distributed in whole to Davis Elkins and Katherine Elkins Hitt, as the sole surviving children of Hallie D. Elkins. It is from this holding that the appeal comes to this Court. Only one issue arises upon this appeal. Did the lower court err in excluding the infant appellant from the class described as "children" in paragraph XV, and eliminating him from equal participation? It seems that the testator had first in mind his three living children in the making of his will, that they "may have an assured income during their lives". But what do we determine the words following to mean: "and that some provision may be made for those depending upon them at their death"? Of course, it is fundamental that the term "children" in its primary sense and in the absence of qualifying words and provisions means issue of the first degree. On the other hand, the books are full of cases holding that the meaning of an isolated word may be modified or broadened, such as the term "children" to include grandchildren, if it is shown from the will as a whole that the testator so intended. *Earl of Tyrone* v. *Marquis of Waterford,* I De Gex, Fisher & Jones 637; IV Kent's Commentaries, (13th Ed.), 419; *Prowit* v. *Rodman,* 37 N. Y. 42; *Bowker* v. *Bowker,* 148 Mass. 198, 19 N. E. 213; *Dunn* v. *Cory,* 56 N. J. Eq. 507, 39 Atl. 368; *Wilson* v. *Rand,* 215 Ala. 159, 110 So. 3; Schouler on Wills, (5th Ed.) 670; I Page on Wills (2nd Ed.), 1505. We must resort to the context of the will of Henry G. Davis to ascertain whether there are any expressions which support the broad construction of the word "children" and the theory that such term includes grandchildren.

At the opening words and first four lines of the paragraph under consideration, that paragraph XV which states the purpose of the trust bequest, we find: "In order that my children Hallie D. Elkins, Grace Davis Lee and John T. Davis, may have an assured income during their lives, and that some provision may be made for those dependent upon them at their death." At the time the will was written the five children

of Hallie D. Elkins were over twenty-five years of age, each of them married, and their father, Stephen B. Elkins, was dead, leaving a large estate to them. It would be going far to say that they were regarded as dependents upon the bounty of their mother. Could the testator have intended these five adult children only, and no other persons whatever, by expressly making provision for those who might be dependent on Mrs. Elkins at her death? By using the words "those dependent upon" Hallie D. Elkins, the testator in all likelihood, knowing that his daughter would probably have no more children and that those of her children in life were over twenty-five years of age and in the nature of things not dependent, contemplated the application of those words to the child of a deceased child of Mrs. Elkins. The remainder of bequest XV which gave the children of his own children only the income "until they respectively reach the age of twenty-five years," the testator must have had in mind the family of Hallie D. Elkins as well as the families of his other children, and that he well knew Mrs. Elkins' children were past the age of twenty-five years. If we make the application we seek, it would amount to an absurdity to believe that this part of the bequest would apply to her children in the literal and narrow sense and not to the grandchildren as well. The provision, "but if any of my said children leaves no children nor child then his or her share is to go to his or her legal heirs", demonstrates that the testator had in mind "grandchildren" of his daughter Hallie D. Elkins, and desired to provide for them, for certainly the grandchildren, if any, would be the sole legal heirs in the event named. If the children of Mrs. Elkins do not receive the principal of the fund and have no power to dispose of it in advance of receiving the same, who would be protected by such last-quoted provision if it were not imposed to protect and "make provisions" for the defendant infant children of Mrs. Elkins' children, namely her grandchildren? Another act of the testator which has significance is the bequest of his granddaughter, Katherine Brown Barnett, in paragraph XIV of the will. It is therein provided: "The provision herein made for my said granddaughter is in lieu of, and to represent, her mother's portion of my estate, and she shall have no further interest in nor claim upon my estate." This

indicates that he was anxious to provide for every branch of his family. It was the patriarchal spirit that we mentioned in the forefront of this opinion asserting itself.

When we take into consideration that it is an accepted rule of construction in the interpretation of wills that a presumption exists against the testator's disinheriting direct descendants, our foregoing reflections are important. *Barker* v. *Haner*, 111 W. Va. 237, 161 S. E. 34. This is the rule in other jurisdictions. *Cummings* v. *Pendleton*, 112 Conn. 569, 153 Atl. 175; *Dahmer* v. *Wensler*, 350 Ill. 23, 182 N. E. 799; I Page on Wills (2d Ed.) 1388. A construction which will disinherit the natural objects of testator's bounty is not favored, and the construction which conforms so far as possible to our statute of distributions is to be preferred. *Conklin* v. *Davis*, 63 Conn. 377, 28 Atl. 537. Account should be taken of the relative situation of the parties, the ties of affection subsisting between them, and the motives which would naturally influence the mind of the testator, as well as the existence of a moral duty on his part toward the party who will benefit from compliance with his desires and recommendations. *Poor* v. *Bradbury*, 196 Mass. 207, 81 N. E. 882.

In the construction of wills "uniform justice is better than strict consistency" because "the testator necessarily confides his meaning to an instrument which courts of equity are sacredly enjoined to interpret justly as between him and those he leaves behind, should controversy arise, death having closed his own lips." Schouler on Wills and Administration, p. 529, note 1.

The construction sought here by the appellee is consonant with the best rules of construction. So, a holding in accordance with the second plan proposed in the bill of complaint is not inequitable. It is not a result which it can be confidently said the testator did not contemplate or the law does not sanction. It is a fair and equitable distribution among members of the class designated by the testator as beneficiaries. The tenor of the will under review discloses that the testator intended to provide for his children and their families in the spirit of equality. This purpose may be carried out in fairness

to all by a decree holding that Davis Elkins, Katherine Elkins Hitt and the infant, Stephen B. Elkins III, share equally in the controversial fund.

*Reversed.*

LITZ, JUDGE, dissenting:

The decision is, in my view, wholly repugnant to the clear intention of the testator, disclosed by the *plain* language and *reasonable* scheme of the will. (The instrument, which I submit is free from ambiguity in all of its parts, appears in the footnote). As conceded in the opinion, it was "admittedly drawn by an able attorney", under the direction of "a man (the testator) of education and intelligence", who had reached a high state of mental maturity through "long and varied experience in business affairs" and by serving "his state and nation in political office of high rank". After establishing trusts in favor of numerous religious, charitable, educational and social institutions and making bequests to servants, friends and other relatives, Senator Davis disposed of the remainder of his large property holdings in the interest of his children, grandchildren, and more remote descendants. In addition to specific bequests or devises, he gave to each of his living children, (Hallie, Grace and John T.), in Paragraph XV of his will, the income from $500,000.00 in bonds, and, by Paragraph XIX (with a reduction of the interest to John T. in favor of his children), one-third of the residue of his vast estate. He set aside $1,050,000.00 in stocks and bonds for the benefit of Katherine Brown Barnett, the only child of a deceased daughter; $50,000.00 in bonds in favor of Henry G. Davis, Jr., a son of John T.; $50,000.00 in bonds for the benefit of Henry Davis Lee, son of Grace; $100,000.00 (in bonds) in favor of each of his grandchildren, Hallie D. Davis and Henry G. Davis, Jr., children of John T., as a charge upon his residuary interest; and $5,000.00 in bonds for the benefit of each of his other grandchildren living at the time of, or born after, his death. The testator also gave (in Paragraph XV) to the "children" or "child" of Hallie, Grace and John T. living at the time of his or her death, one-third of the trust fund therein created. Senator Davis was also considerate of his descendants,

more remote than children and grandchildren. He provided that upon the death of his granddaughter, Katherine Brown Barnett, leaving lineal descendants, the trust fund in her favor should pass to them. He gave outright to his three living children (apparently) the major portion of his estate which would naturally pass to their heirs. By Paragraph XV, he provided that upon the death of Hallie, Grace or John T., *"without children or a child,* his or her share" in the trust fund should vest in "his or her legal heirs".

Who can say that this was not a reasonable testamentary disposition? But if it were not, a plain and unambiguous will cannot, for that reason, legally be altered by the courts.

The word "children" or "child" when used in a will, both in its legal and popular sense, denotes issue in the first degree, and cannot be interpreted to include grandchildren or heirs, unless such meaning is clearly indicated by the context or is necessary to give the instrument legal effect. "The word 'children' has a definite legal signification, and, where no other words are joined with it, it has in general no other meaning but issue in the first degree. 2 Minor's Inst. In order that it may be construed to mean descendants of a more remote degree, there must be something on the face of the will to show that it was so intended, for no rule is better settled than that technical words are presumed to be used technically, and that words of a definite legal signification are to be understood as used in their definite sense, unless the contrary appears on the face of the instrument." *Waring* v. *Waring,* 96 Va. 641, 32 S. E. 150, 151. "And first of 'children' we may observe that the *popular* and *legal* sense of the word are in accord. A gift to the children of a person means, therefore, presumably one's immediate offspring and does not extend to 'grandchildren'; especially where there are children who fully answer the description." Schouler on Wills, 6 Ed. p. 1125. "According to both its legal and ordinary acceptation, the term 'children' means immediate offspring, and by the use of that term to describe his beneficiaries, a testator does not include his grandchildren, *unless other provisions of his will make their inclusion necessary to give effect to the will."* *Runyon* v. *Mills,* 86 W. Va. 388, 103 S. E. 112. The court recognizes this rule by stating: "Of course, it is fundamental

that the term 'children' in its primary sense and in the absence of qualifying words and provisions means issue of the first degree.'' The opinion then proceeds: ''We must resort to the context of the will of Henry G. Davis to ascertain whether there are any expressions which support the broad construction of the word 'children' and the theory that such term includes grandchildren.'' The parts of the context accordingly selected, for the purposes of expanding the meaning of the word ''children'' into ''heirs'', follow:

1. The introductory part of Paragraph XV which reads: ''In order that my children, Hallie D. Elkins, Grace Davis Lee, and John T. Davis, may have an assured income during their lives, and that some provisions may be made for those dependent upon them at their death, * * *.'' It is suggested that the testator by using the phrase ''those dependent upon them'', intended to include all the heirs of his living children. This theory is without legal basis as the subsequent language of the paragraph defines ''those dependent upon'' the first takers as ''his or her children'' or ''child''.

2. It is said that the provision in favor of his granddaughter, Katherine Brown Barnett, indicates a desire of the testator, in a ''patriarchial spirit'', to provide for every branch of his family. It is true, no doubt, that the testator, in keeping with his course of life, was anxious to provide for every branch of his family, as he did do, but it is evident also, if a motive were required to effectuate the plain and unequivocal provisions of his will, that the trust created by Paragraph XV for the benefit of his ''children'' and ''grandchildren'' was prompted by a family pride to protect his descendants from want to the third generation.

3. It is further stated that ''the provision *'but if any of my said children leave no children nor child, then his or her share shall go to his or her legal heirs'*, demonstrates that the testator had in mind 'grandchildren' of his daughter, Hallie D. Elkins, and desired to provide for them'', as ''grandchildren'' would come within the designation, ''legal heirs''. I have already indicated that the testator ''had in mind'' his descendants more remote than children and grandchildren and made provision for them. But he definitely declared that his descendants farther removed than children and grandchildren

should participate in the trust fund under Paragraph XV only in event that *"any of my said children leave no children nor child"*.

"Resorting" to extrinsic circumstances, the opinion seems to question the intention of the testator to provide for the children of Mrs. Elkins because they had already received a large inheritance from their father. This theory is not only without legal significance, but contrary to human experience. Senator Davis had lived long enough to realize the force of the addage that the millionaire of today may be a pauper tomorrow, especially where the riches have come by inheritance or gift. Otherwise, he would not have deemed it prudent to establish the trust fund for his children as each were receiving a large fortune from his estate. The intention of the testator being expressed in clear and unequivocal language, the will cannot properly be changed to suit the opinion of the court as to what would have been a fair or wise disposition of his estate. "If the language used in the will expresses a definite unambiguous intention, the court will not look to the surrounding circumstances for the purpose of varying the intention which is thus expressed in the will." Page on Wills, p. 1373. "Since the courts give effect to the intention as expressed in a will, if not in conflict with any positive rule of law, it follows that where the intention of testator to make an unjust, unfair or absurd disposition of his property is clear, then the court has no choice but to give effect to such disposition of his property, however, unfair the injustice of such will may impress the members of the court in their private capacity." Page on Wills, section 813. "When the language of the will is plain, courts 'are not at liberty' to speculate on the intention of the testator." *First Huntington National Bank, Trustee,* v. *Mt. Holyoke College et al.,* 175 S. E. 338, recently decided by this court. "It is only where the will affords no satisfactory clue to the real intention of the testator, say the decisions, that courts may from necessity, resort to legal presumptions and rules of construction, and then such rules must yield to the apparent intention of the testator, expressed in his will, for the true inquiry is not what the testator meant to express, *but what the words he used do express."* *Neal* v. *Hamilton Co.,* 70 W. Va. 250, 256, 73 S. E. 971, 973.

It is again surmised that the testator intended the "heirs" of Mrs. Elkins in using the words "children" and "child", because her children were at the time of the execution of the will more than 25 years of age. The basis of this speculation is that the will provides that the fund shall be paid to the children of Hallie, Grace and John T. when they respectively reach the age of 25 years. The provision applies to the children as a class, and is, therefore, not ambiguous. The children of Grace and John T. were under the age.

In approval of its conclusion that the testator intended "heirs" in using the words "children" and "child", the court says: "When we take into consideration that it is an accepted rule of construction in the interpretation of wills that a presumption exists against the testator's disinheriting direct descendants, our foregoing reflections are important." Citing *Barker* v. *Haner,* 111 W. Va. 237, 161 S. E. 34, which holds that, "In construing a will, the intention of the testator to exclude the heir from participation in any portion of his estate must convincingly appear either by the express terms, or by necessary implication." The rule referred to has no application. Stephen B. Elkins, III, the great-grandson of the testator, was neither the direct descendant nor the heir of the testator. His grandmother, Hallie D. Elkins, was the direct descendant of the testator, and but for the Paragraph XV of the will, creating the trust for the benefit of herself, Grace, John T., and their children, would have inherited one-third of the property therein set aside. The direct descendants of a testator means his nearest or immediate descendants. *Ballantine* v. *Ballantine,* 152 Fed. 775, 776, 786; *Stone* v. *Forbes,* 75 N. E. 141, 144, 189 Mass. 163. It is thus seen that the descendants of the testator beyond his grandchildren, including the great-grandson, Stephen B. Elkins, III, were not disinherited by the testator in Paragraph XV. They would not have received anything as heirs of Henry G. Davis had he died without a will. They were benefited by the terms of Paragraph XV by being made contingent remaindermen of the fund. In the opinion, it is observed that "in the interpretation of the will, the court will adopt such a construction as will give effect to every part of an instrument and thus avoid declaring any provisions which it may contain to be repugnant

to others, provided some effect can be given not inconsistent with the general intent gathered from the whole will.'' Notwithstanding this rule, the court, in effect, excludes from the will the plain and definite clause ''but if any of my said children leaves no children nor child, then his or her share is to go to his or her legal heirs''. The terms ''children'', ''grandchildren'', ''descendants'' and ''heirs'' frequently appear in the will, and in every instance (I believe), as having been used in their legal and popular sense. In Paragraph XV, the word ''children'' not only appears seven times, but is used in the very portion of the text, which the court has held to be ambiguous and therefore subject to interpretation, in contradistinction from the word ''heirs''. The testator says: ''But if any of my said children leaves no children nor child, then his or her share is to go to his or her legal heirs.'' The court has, in effect, held that this clause should read: ''But if any of my said children leaves no *heirs* nor *heir*, then his or her share is to go to his or her legal *heirs*'', notwithstanding, as has been pointed out, there is nothing in the context of the will to indicate an unusual meaning intended of the words under consideration. ''It must be borne in mind * * * that general rules of construction are resorted to merely as aids to determine the meaning of an obscure will. Such rules can never be resorted to where the meaning of the will is clear and plain. 'There can be no safer guide for interpreting a will than the testator's own words when they are clear and free from doubt.' When the language of the testator is plain and his meaning clear, the courts have nothing to do but to carry the express will of the testator into effect, if it is not inconsistent with some rule of law. It has been well said: 'That in the construction of wills adjudicated precedents have but little application except to present the general rules and principles, and it may be added as equally well settled, that rules of interpretation will not be invoked except when the language used by the testator is of a doubtful construction.' '' Vol. 1, Harrison on Wills and Administration, sec. 191.

Suppose the parts of the context relied on by the court, considered alone, are sufficient to create a doubtful intention, they will not be permitted to destroy a clear intention expressed by the plain language (which is the last expression of

the testator), "but if any of my said children leave no children nor child, then his or her share is to go to his or her legal heirs." "A clearly expressed intention in one part of a will does not yield to a doubtful construction in any other part. *Bartlett* v. *Patton*, 33 W. Va. 71, 80, 10 S. E. 21; *Martin* v. *Martin*, 52 W. Va. 381, 391, 44 S. E. 198; *Smith* v. *Schlegel*, 51 W. Va. 245, 249, 41 S. E. 161." *Behrens* v. *Baumann*, 66 W. Va. 56, 61, 66 S. E. 5, 7.

In conclusion: (1) The legal and popular meaning of *children* or child does not include *grandchildren*. (2) The very clause in question ("if any of my said *children* leaves no *children* nor *child* then his or her share is to go to his or her legal *heirs*") uses the terms *children* and *child* in contradistinction to *heirs* (*grandchildren*). (3) There is nothing in the context (it is submitted) to indicate that *children* or *child* was used in other than its legal and popular sense.

Therefore, I respectfully dissent.

"I, Henry G. Davis, do make publish and declare this, as and for my last will and testament, hereby revoking all other wills heretofore made by me.

I. To the Davis Trust Company I give and bequeath Thirty Thousand Dollars in bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust, the income therefrom to be devoted to the support of the Davis Memorial Hospital at Elkins, West Virginia, to be supplemented by such income and contributions as it may receive from other sources. And my Executors are authorized and requested to provide permanently for the control and government of said hospital, and in the board of management to always have as members thereof the Judge of the Circuit Court of the District, the Mayor of Elkins and one or more of my children or other lineal descendants.

II. To the Davis Trust Company, I give and bequeath One Hundred Thousand Dollars in bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust, the income therefrom to be used under the direction of the Board of Trustees of the Davis and Elkins College, for the support and maintenance of said College. In the event that the Davis and Elkins College from any cause what-

ever should be discontinued, or cease to exist as a College, then the endowment heretofore provided of One Hundred Thousand Dollars for the support and maintenance of said College, shall revert to and become part of my estate. If, however, said Davis and Elkins College should cease to exist, or to be maintained as a College, so that the said trust fund of One Hundred Thousand Dollars should revert to and become part of my estate but the grounds and buildings thereon of said College should be used as a preparatory, academic, business or manual training school, then and in that event, I hereby give and bequeath to the Davis Trust Company Fifty Thousand Dollars in bonds of the Coal and Coke Railway Company, as a fund to be held by it perpetually in trust, the income therefrom to be devoted to support and maintenance of said school as long as said property is used for educational purposes. When, however, said property ceases to be used for educational purposes, then said trust fund of Fifty Thousand Dollars shall revert to and become part of my estate.

III. To the Davis Trust Company I give and bequeath Forty Thousand Dollars in bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust for the benefit of the Davis Childs Shelter at Charleston, West Virginia, and of the income therefrom such amount, not less than one hundred dollars a month, as my Executors may determine, shall be used toward defraying the expenses of the maintenance, care and support of said institution; provided, however, that if the property in Charleston purchased and conveyed by me for the Home or Shelter aforesaid, shall revert to my estate under the terms of the conveyance of the same, then the fund of Forty Thousand Dollars herein bequeathed shall also revert to and become part of my estate.

IV. To the Davis Trust Company, I give and bequeath Ten Thousand Dollars in bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust for the Maplewood Cemetery Company, the income therefrom to be applied under the direction of my Executors, to keeping up and improving Maplewood Cemetery, the lodge at the entrance thereto and the roadway therefrom to the railway.

V. To the Davis Trust Company, I give and bequeath Fifteen Thousand Dollars in bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust, one-third of the income from which shall go towards the payment of the salary of the pastor and other expenses of the Presbyterian Church at Davis, West Virginia; one-third towards the payment of the salary of the pastor and other expenses of the Davis Memorial Presbyterian Church of Elkins, West Virginia, and the other third toward the payment of the salary of the pastor and other expenses of the Davis Memorial Church of Gassaway, West Virginia.

VI. To the Davis Trust Company, I give and bequeath Nine Thousand Dollars in bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust, the income therefrom to be given annually in equal amounts to the churches now existing in Elkins, West Virginia, of the following-named denominations: Methodist Episcopal, Methodists Protestant, Baptist, United Brethren, Christian, Protestant Episcopal, Lutheran, Catholic and the congregation worshipping in the church building I erected and gave for the use of the colored people. Other provisions has heretofore been made herein for the Presbyterian Church of Elkins. At any time that any of the foregoing-named churches should cease to have an organization in the town of Elkins for a period of two years, then the one-ninth part of this bequest pertaining thereto shall revert to and become part of my estate.

VII. To the Davis Trust Company, I give and bequeath one One Thousand Dollar bond of the Coal and Coke Railway Company, to be held by it perpetually in trust, the income therefrom to be given semi-annually to the Grand Lodge of the Independent Order of Odd Fellows of the State of West Virginia.

To the Davis Trust Company, I give and bequeath one One Thousand Dollar bond of the Coal and Coke Railway Company to be held by it perpetually in trust, the income therefrom to be given semi-annually to the local lodge or lodges, of the Independent Order of Odd Fellows of Elkins, West Virginia.

To the Davis Trust Company, I give and bequeath one One Thousand Dollar bond of the Coal and Coke

Railway Company to be held by it perpetually in trust the income therefrom to be given semi-annually to the local lodge or lodges of the Order of Masons of Elkins, West Virginia.

VIII. I have purchased at a cost of about One Hundred Thousand Dollars and presented to the City of Charleston, West Virginia, certain ground opposite the Capitol and adjoining the Governor's Mansion a portion of which is occupied as a site for the building of the Young Men's Christian Association, and the remainder is used as a public park and which is known as the Davis Square or Park. As a park for the use of the public, it is to be presumed that the City will keep it in order, but to provide additional attention thereto, I give and bequeath to the Kanawha Banking and Trust Company of Charleston, West Virginia, Five Thousand Dollars of bonds of the Coal and Coke Railway Company as a fund to be held by it perpetually in trust, the income therefrom to be expended for the care, maintenance and improvement of said ground under the direction of the Trustees in whose name it is held.

IX. Upon the site of the old Presbyterian Church at Piedmont, West Virginia, I have built a school house called the Davis Free School, at a cost of about Twenty Thousand Dollars; at Henry, West Virginia, I have built a brick school house at a cost of about Six Thousand Dollars; at Gassaway, West Virginia, I have built a brick school house at a cost of about Ten Thousand Dollars; the Presbyterian Church at Elkins, constructed of stone and costing about Twenty-five Thousand Dollars, was built by my brother Thomas and myself as a memorial to our parents; the Presbyterian Church at Gassaway, also of stone and costing about Twenty Thousand Dollars, was built by me as a memorial to my mother; projected by my wife and established by me as a memorial to her, the Davis Memorial Hospital at Elkins and the addition thereto were built and equipped by me at a cost of about One Hundred and Forty Thousand Dollars; including the cost of the President's house which was built by me, I have contributed about Fifty Thousand Dollars towards the erection and furnishing of the Davis and Elkins College buildings etc.; I have built and given for the use of the colored people a small church building at Elkins; and I have purchased and conveyed for its present uses a prop-

erty at Charleston, West Virginia, now called the "Davis Child Shelter" (and furnished the same) at a cost of about Fifteen Thousand Dollars. I refer to these different properties to make it plain that they are in no way to be considered a part of my estate unless they should hereafter revert to my estate in accordance with the terms of the conveyances of the several properties. If at any time these properties or others herein bequeathed for public uses, shall from any cause revert to my estate, then the endowment funds pertaining thereto and created herein, shall also revert to and become part of my estate.

X. To my grandson, Henry G. Davis, Jr., the child of my son John, I give and bequeath Fifty Thousand Dollars of Coal and Coke Railway Company bonds, to be deposited with the Davis Trust Company, to be held by it in trust, the income therefrom to be used and expended for his benefit under the direction of my Executors, until my said grandson shall reach the age of twenty-one years when Twenty-five Thousand Dollars, that is one-half of said bonds, shall become his sole and absolute property and be delivered to him as such; the income from the remaining Twenty-Five Thousand Dollars of bonds shall be paid directly to him until he shall reach the age of forty years, when said Twenty-Five Thousand Dollars of bonds shall also become his sole and absolute property and shall be delivered to him as such.

To my grandson Henry Davis Lee, the child of my daughter Grace, I give and bequeath Fifty Thousand Dollars of Coal and Coke Railway Company bonds to be deposited with the Davis Trust Company to be held by it in trust, the income therefrom to be used and expended for his benefit, under the direction of my Executors, until my said grandson shall reach the age of twenty-one years, when Twenty-Five Thousand Dollars, that is one-half of said bonds shall become his sole and absolute property and be delivered to him as such, the income from the remaining Twenty-Five Thousand Dollars of bonds shall be paid directly to him until he shall reach the age of forty years, when said Twenty-Five Thousand Dollars of bonds shall also become his sole and absolute property and be delivered to him as such.

To Davis Elkins, another grandson, I have hereto-

fore given Ten Thousand Dollars in stock of the Washington Coal and Coke Company, but this is not to interfere with the bequest to him of five One Thousand Dollar Coal and Coke Railway Company bonds under the general provision which is to follow herein.

To each of my grandchildren who may be living and twenty-five years of age at the time of my death, I give and bequeath five One Thousand Dollar Coal and Coke Railway Company bonds; to each of my grandchildren who may be living at the time of my death and are under the age of twenty-five years, with the exceptions of my grandsons Henry G. Davis, Jr., and Henry Davis Lee, for whom provisions has already been made herein, and to each of my grandchildren who may be born after my death, I give and bequeath five One Thousand Dollar Coal and Coke Railway Company bonds, to be deposited with the Davis Trust Company to be held by it in trust for the use and benefit of my said grandchildren, respectively, until they shall arrive at the age of twenty-five years when they shall be delivered to said grandchildren, respectively, and until that time the income therefrom shall be paid and used for the benefit and welfare of said grandchildren, respectively.

XI. I give and bequeath to each of the children of my deceased sister Eliza and of my deceased brothers John and William, who may be living at the time of my death, one One Thousand Dollar Coal and Coke Railway Company bond to be given to them, respectively, by my Executors; and I also give and bequeath to C. M. Hendley Two Thousand Five Hundred Dollars to be given to him by my Executors.

XII. I give and devise to my grandson, Henry G. Davis, Jr., the child of my son John, my open-faced gold watch which I am now carrying and upon the back of which are my initials, said watch having been presented to me by my friend R. C. Kerens.

XIII. I give and bequeath to Joseph Ervin, my farm foreman who has served me faithfully for many years, Five Hundred Dollars to be paid to him by my Executors. I also give and bequeath the sum of One Hundred Dollars to Edward Gillem, who as coachman has served me and my family well for a long time; and I also give and bequeath the sum of Fifty Dollars to William Lewis, now employed by me if still in my employ at the time of my death.

XIV. To the Davis Trust Company, I give and bequeath Two Hundred and FiftyThousand Dollars of bonds of the Coal and Coke Railway Company, Four Hundred Thousand Dollars face value of preferred stock of the Coal and Coke Railway Company and Four Hundred Thousand Dollars face value of common stock of the Coal and Coke Railway Company, as a fund to be held by it in trust, the income therefrom to be devoted to the sole and separate use and benefit of my granddaughter Katherine Brown Barnett until she reaches the age of thirty years, when Fifty Thousand Dollars of said Coal and Coke Railway Company bonds are to become her sole and separate property and shall be delivered to her as such; the remaining Two Hundred Thousand Dollars of bonds and the Four Hundred Thousand Dollars of said preferred stock and the Four Hundred Thousand Dollars of said common stock are to be continued to be held in trust and the income therefrom is to be paid to her until she shall reach the age of thirty-five years when Fifty Thousand Dollars of said Coal and Coke Railway Company bonds are to become her sole and separate property and be delivered to her as such; and the remaining One Hundred and Fifty Thousand Dollars in bonds and the Four Hundred Thousand Dollars in said preferred stock and the Four Hundred Thousand Dollars of said common stock are to be held by said Trust Company in trust, the income therefrom to be paid to my said granddaughter during her natural life. The trust fund herein provided and the revenue therefrom shall be held by said Trust Company free from the control, and not liable for the debts, of the husband of my said granddaughter, and shall not be subject to, nor liable for, any claim in his favor or against him. Upon the death of my said granddaughter, leaving lineal descendants, the said trust fund shall continue to be held by said Trust Company in trust for such lineal descendants, respectively, in the same proportion that they would have inherited, or taken said fund had it belonged to my said granddaughter absolutely and she had died intestate, and upon the death of any of such lineal descendants, the said Trust Company shall pay over to their next of kin on the side of my said granddaughter all of said fund held in trust for such lineal descendants, in such pro-

portion as said next of kin would have taken the same had it belonged to such lineal descendants absolutely and they had died intestate leaving no other next of kin than those on the side of my said granddaughter. In the event that my said granddaughter should have no lineal descendants living at the time of her death she shall have the right to dispose of said trust fund by will the same as if it were her sole and separate property. The provision herein made for my said granddaughter is in lieu of, and to represent, her mother's portion of my estate, and she shall have no further interest in nor claim upon my estate. This is in addition, however, to the amount which she received from me as Guardian and which came principally from personal property I had given her mother during her lifetime.

XV. In order that my children, Hallie D. Elkins, Grace Davis Lee and John T. Davis, may have an assured income during their lives, and that some provision may be made for those dependent upon them at their death, I give, devise and bequeath to the Davis Trust Company, One Million Five Hundred Thousand Dollars to be held by it in trust for my aforesaid children in equal proportions, that is to say, Five Hundred Thousand Dollars for each, the revenue therefrom to be paid to them semi-annually during their lives; and at the death of any of my said children, I give and bequeath his or her share in equal proportions to his or her children, the income or revenue therefrom to be devoted to their welfare until they respectively reach the age of twenty-five years when they are to receive from my estate their share of the principal of the fund; but if any of my said children leaves no children nor child then his or her share is to go to his or her legal heirs. The intent of the foregoing provision is that a portion of my estate shall be held in trust so that it cannot be spent, sold or given away by my said children, and they, therefore, shall have no power to sell, transfer, or in anyway dispose of their interest in said trust fund, or of the income or proceeds thereof, in advance of receiving the same. The trust fund of One Million Five Hundred Thousand Dollars for which provision is hereby made may consist of Coal and Coke Railway Company bonds, or other bonds, stocks or other property, at a fair valuation, as my Execu-

tors may determine, and is to be managed and its accounts kept under their direction by the Davis Trust Company.

XVI. In the creation of the trust fund for my said children, it is not my intention that it shall be made entirely in advance of any distribution made to them of their distributive part of the estate, and my Executors are therefore empowered and instructed to use their discretion in so allotting and distributing the property and income of the estate that it will be divided in value as nearly as practicable one-half to my said children and one-half to the trust fund until the latter has reached the sum of One Million Five Hundred Thousand Dollars.

XVII. I leave to my daughter, Grace Davis Lee, for the term of her natural life, the house, grounds and farm where I reside at Elkins, West Virginia, to be controlled by her and occupied as her home, but she shall not have power to sell or otherwise dispose of her life estate therein, it being my desire that she shall occupy and use the same as her home. She shall keep the house, grounds and farm in as good condition substantially as she receives the same at my death, and may change and improve them as though they belong to her absolutely, except she shall not do anything to materially impair the inheritance; provided, however, that she shall elect within one year from the date of my death to accept this legacy at the valuation of Fifty Thousand Dollars, which is considerably less than the property is worth, and which amount is to be charged my daughter, Grace Davis Lee, in the distribution of the residuary part of my estate. Of the furniture and other things in said house at Elkins, I give and bequeath: first, to my daughter Hallie D. Elkins any ten articles she may desire to have, and after she has made her selection of the same, then, second, to my son, John T. Davis, any ten articles he may desire to have, and after he has made his selection of the same, then, third, to my granddaughter, Katherine Brown Barnett, any five articles she may desire to have. If my daughter, Grace Davis Lee, should elect to accept the legacy heretofore made to her in this paragraph of this will, then I give absolutely to her all the rest of the furniture and other contents of said house, including the library, but excepting in my office room

the books, documents, papers and other contents of which, I give and bequeath to my son, John T. Davis, but my personal ledgers or account books shall be placed in the custody of the Davis Trust Company, and I also give and bequeath to my daughter Grace Davis Lee, my horses, carriages, farming implements and utensils, cattle and other live stock on said place, and in the event of such acceptance by her, then, upon her death, I give and devise the said house, grounds and farm herein left her for life, to her son, Henry Davis Lee, and in the event that he shall not survive his mother, then, at the death of the latter, I give and devise said house, grounds and farm to her eldest son then living. My purpose and desire are that the said property be kept in the family, that it shall be occupied by my said daughter Grace Davis Lee and her family during her life, and that after her death the property shall pass absolutely to her eldest son who I hope will occupy it as his home. The property herein conveyed to my daughter Grace Davis Lee is to be held and managed by her free from the control of her husband and not liable for any indebtedness of his, and shall not be subject to nor liable for any claim in his favor or against him, nor any claim in favor of or against anyone else.

XVIII.   In my two personal account books known as the old and the new private ledgers, I have made or caused to be made entries from time to time of moneys, bonds, stocks and other personal and real property given to my children, respectively, and which belong to them absolutely and are no part of my estate and upon which my estate has no claim.

XIX.   Of the rest and residue of my estate after discharging all of my just debts and other obligations, and after paying the legacies hereinbefore or hereinafter made, I give, devise and bequeath to each of my daughters, Hallie D. Elkins and Grace D. Lee, one-third part thereof in value, and to my son John T. Davis one-third part thereof in value less Two Hundred Thousand Dollars to be set apart and disposed of as hereinafter provided; and for the purpose of creating the trust funds heretofore provided for and making distribution of the remainder of my estate, I hereby give to my Executors hereinafter named, entire discretion and full power and control of, and over, all of my property real and personal, to sell, transfer, and convey the same by deed or

otherwise, if they shall deem such course best. They may rent or lease any part of said estate, may lease coal and the right to mine the same, sell lands, timber or other property and convey the same, and, in short, do all things that in their judgment may be best for my said children and promotive to their interest. They may make distribution in kind to my said children either in whole or in part, if they find such course practicable, it being my intention to, and I do hereby, confer upon my said Executors, full discretion as to the form in which each of the beneficiaries shall receive his or her share or portion, whether in property, real or personal, or in money, bonds or stocks, or partly in all, but in the selection or allotment of the property, real and personal, making up each share or portion, I desire as far as practicable, that the preference of said children, respectively, be respected.

XX. The Two Hundred Thousand Dollars set apart from my son John's portion of the residue of my estate, I devise and bequeath to the Davis Trust Company in bonds of the Coal and Coke Railway Company at their face value to be held by it in trust for the benefit of Hallie E. Davis and Henry G. Davis, Jr., children of my son John, as hereinafter provided. My Executors, without waiting for a general distribution of my estate, or until they can determine just how much the residue of my estate will be, shall as soon as practicable after my death, deliver to the said Trust Company, in order to carry out this bequest, two hundred Coal and Coke Railway Company bonds of the denomination of One Thousand Dollars each and aggregating at their face value Two Hundred Thousand Dollars, and said Trust Company shall hold said bonds for the following-named purposes: One-half thereof in value for the use and benefit of said Hallie E. Davis and the other half for the said Henry G. Davis, Jr., and collect the interest therefrom; and until said children, respectively, reach the age of twenty-one years, shall, under the direction of my Executors, devote the interest received by it (less one per cent thereof to be retained for its compensation) to the support, maintenance, care, education and training of said children. As said children shall, respectively, arrive at the age of twenty-one years, one-half of the portion of said fund held in trust for

him or her, shall be delivered to him or her, as and for his or her sole and absolute property, and thereafter the interest on the other half of said fund held in trust for him or her (less compensation to the Trust Company as aforesaid) shall be paid over to him or her by the said Trust Company semi-annually as it is received until said child shall arrive at the age of thirty years when the remainder of said fund so held in trust for him or her, shall be delivered to him or her, as and for his or her sole and absolute property.

XXI. In the management of my estate it is my desire that my daughters Hallie D. Elkins and Grace D. Lee be consulted in matters of importance and their wishes complied with as far as practicable by my Executors, especially where their personal interests are involved.

XXII. If any one or more of my children shall in any way contest or undertake to annul or change any of provisions of this will, the devises and bequests to such child or children shall be abated to the extent of one-half thereof, and such one-half abated shall pass to and stand for the benefit of such of my children as acquiesce in the provisions of this will, just as it otherwise would have passed to and stood for the benefit of those from whom it is abated.

XXIII. When we were all young men my brothers Thomas B. Davis and William R. Davis and myself entered into business together under the name of H. G. Davis & Co. which continued until the death of my brother William, when the firm became H. G. Davis & Bro., and so remained until the death of my brother Thomas on November 26, 1911, leaving me the surviving partner of the firm although the eldest born of the three original members thereof. During all this long period of partnership my brothers and I were in full accord in all our dealings, all our relations both business and personal were always harmonious and pleasant and I wish to record here especially my appreciation of the generous and sympathetic cooperation of my brother Thomas, who long survived William, in all our business affairs extending over fifty years and to speak of the affection and regard in which I held him and which endured and increased during this long association. I owned a three-fifth interest and my brother Thomas a two-

fifth interest in the business of the firm at the time of his death and if the affairs of the partnership are not entirely closed at the time of my death I hereby empower my Executors to do all things necessary to a full and complete settlement of the affairs of the firm.

XXIV. If there should not be enough Coal and Coke Railway Company bonds in my estate to satisfy the bequests hereinbefore made, then my Executors are empowered and directed to procure whatever additional amount of said bonds may be necessary for that purpose, provided they can be purchased at a price not greater than their face value, but if they cannot be so purchased then my Executors are empowered to use their discretion in procuring other safe interest-bearing securities which are to be substituted for Coal and Coke Railway Company bonds wherever necessary to fulfill the bequests hereinbefore made; and should the principal of said Coal and Coke Railway Company bonds or of any of them, or of any other interest-bearing securities which my Executors or the Davis Trust Company may purchase to carry out the provisions of this will, be paid prior to their distribution as hereinbefore provided, then my Executors or the Davis Trust Company, as the case may be, are empowered to invest the amount received for said bonds or other securities so paid, in other safe interest-bearing securities.

XXV. It is my wish that all the stock, both preferred and common, of the Coal and Coke Railway Company and all the stock of the Davis Colliery Company that may be owned by me at the time of my death, be kept intact for five years thereafter, and my Executors are hereby directed not to distribute or otherwise dispose of said stock during that period unless they should be unanimously of the opinion that it would be to the best interests of my estate to make distribution or other disposition thereof before the expiration of that time.

XXVI. Having built largely of my own means the Coal and Coke Railway and owning a majority of the stock of that Company, I have considered it expedient in order more readily to secure funds, from time to time, for said Railway, to personally endorse that Company's notes for money borrowed on short time loans, and if at the time of my death notes of the

Railway Company so endorsed are still outstanding and it is considered necessary by the Management of the Railway Company to continue to renew these obligations as they become due, or to make other loans to replace them, then my Executors, as Executors of my estate, if they shall conclude that it is to the interests of my estate so to do, are given full power and discretion to endorse said notes, whether in renewal of loans already made or for new ones to replace old ones, but my Executors are not to have authority to endorse said Railway notes to an aggregate amount exceeding the amount thereof at the time of my death. Certain Coal and Coke Railway Company bonds and other securities belonging to me individually, are being used as collateral security for some of the notes of the Railway Company, upon which I am also an endorser, and my Executors are empowered and authorized in their discretion to continue the use of these bonds and other securities as security for these and other loans of the Railway Company upon which they may be or may become endorsers as hereinbefore provided.

XXVII. Notwithstanding anything hereinbefore provided that may seem to conflict herewith, my Executors are hereby directed not to distribute nor otherwise dispose of, but to continue to hold in the estate, the stock that I may own at the time of my death in the Davis Trust Company and the Elkins National Bank, and it is my desire that the members of my family shall not sell nor otherwise dispose of the stock that they may own in said institutions but to retain the same in order that the family interests may be continued therein.

XXVIII. I desire that there shall be completed in book form a sketch of my life, with such of my speeches, addresses, reports and other public papers, and such articles personal to myself as have been or may be written, as my Executors may consider appropriate, and that well-bound copies of this book be given to the members of my family, my grandchildren and other relatives, and such other friends and acquaintances as would likely appreciate them. My Executors are hereby authorized to devote from the funds of the estate such amount as may be necessary for this purpose.

XXIX. I record here my wish to be buried in

Maplewood Cemetery, near Elkins, West Virginia, by the side of my wife and near where my mother and brother Thomas are buried, and direct my Executors to erect a suitable monument to my memory. The sum of Thirty Thousand Dollars or so much thereof as may be necessary is hereby provided and set apart from my estate with which to pay the cost of said monument and of such other memorials at Elkins and elsewhere as my Executors and family may decide to erect. The site of this cemetery was selected by me and I conveyed the ground to the Maplewood Cemetery Company. I have erected a stone lodge at the entrance of the grounds which, with the ground upon which it stands and the roadway to the railroad, I have given to the Cemetery Company. I have also hereinbefore provided an endowment of Ten Thousand Dollars for the care and maintenance of the Cemetery, and I hope, therefore, all my family will consider Maplewood Cemetery as the family burial place.

XXX. I hereby constitute and appoint the Davis Trust Company of Elkins, West Virginia, my son John T. Davis, my grandson Davis Elkins, my son-in-law Arthur Lee, and my friend C. M. Hendley, as Executors of this my last will and testament. I desire that my Executors shall be permitted to qualify and act without giving any security. None of my Executors, except the Davis Trust Company shall receive any compensation for their services as Executors, but they may be reimbursed out of my estate all reasonable expenses incurred by them in the carrying out of this will.

The said Davis Trust Company may receive as compensation for its services one-half of one per centum of the principal and two per centum of the income of the estate passing through its hands. Said Davis Trust Company shall hold all funds, notes, bonds, stocks, claims and accounts; keep and state the accounts of the Executors, pay out all funds and generally do the ministerial and clerical work of the Executors. If from any cause the Davis Trust Company should fail to act as an Executor, then the rights, duties and liabilities of the other Executors shall be as fixed by law except that they shall exercise all of the powers herein conferred upon them.

XXXI. It is my desire that C. M. Hendley who

has my full confidence and is thoroughly familiar with my business affairs, shall continue with my estate in the same personal relations he holds towards me; that he shall be employed to assist my family and Executors in the management of my estate, and that as long as he remains in the active and useful performance of these duties he shall receive for his services Three Thousand Dollars per annum less any compensation he may be paid by corporations in which my estate may be interested.

In testimony of all of which I have this twenty-fourth day of August, 1915, set my hand and seal to this my last will and testament, written upon twenty-seven pages of this paper including this one.

HENRY G. DAVIS"