# CHARLESTON.

C. C. WISE, ADMR. C. T. A. OF BENJAMIN D. HINEGARDNER, DED'D *v.* CHAS. F. HINEGARDNER *et al.*

Submitted November 11, 1924. Decided November 25, 1924.

1. LIFE ESTATES—*Life Tenant of Personalty Not Required in Absence of Will or Statute to Give Security.*

   A legatee of a life estate in personal property is not required to give security for its safe keeping until the termination of his estate, unless the will so requires, or a statute so directs; unless it be shown there is danger of its loss or dissipation. (p. 590.)

   (Life Estates, 21 C. J. § 104).

2. WILLS—*Direction That Proceeds of Sale of Life Estate Be Invested to Secure Remainder Over in Fee to Grandchildren Does Not Raise Life Estate to Fee.*

   If it be ascertained from all parts of a will that a life

estate is intended for the children of the testator in the
portions of the estate devised and bequeathed to them, a power
of sale coupled therewith in which it is directed that the
proceeds of sale shall be invested so as to secure the
remainder over in fee to the grandchildren, does not raise
the life estate into a fee.   (p. 591.)

(Wills, 40 Cyc. p. 1631).

3.  SAME—*Devise to Child, With Remainder to Issue, or Failing
    Issue, to His Brothers and Sisters and Their Decendants,
    Held not Fee Tail, Which Statute Raises to Fee Simple.*

A devise of real estate to a child, and in the event of his
death remainder over to his issue; or failing issue, to go to
his brothers and sisters and their decendants, is not a fee tail
which under the statute is raised to a fee simple in the first
taker.   (p. 593.)

(Wills, 40 Cyc. p. 1602).

4.  SAME—*Every Word, Phrase, and Clause Should Be Considered,
    and Validity and Effect Given to all Parts if Possible;
    Rule, Where Constructions of Portions of Will Conflicting,
    Stated.*

In arriving at the intent, every word, phrase and clause of
the will should be considered and validity and effect given
to all its parts if possible.   And if language be used in the
later portions of the will which according to one construction
would be in conflict with an earlier expression, but by another
construction, of which the language is equally susceptible, it
will not be in conflict; then the construction will be given
which will avoid conflict and render both parts effective.   If
the parts are absolutely irreconcilable the latest expression
usually, but not always will prevail.   (p. 594).

(Wills, 40 Cyc. pp. 1409, 1416, 1417).

NOTE:  Parenthetical references by Editors, C. J.—Cyc.   Not
part of syllabi.

Appeal from Circuit Court, Hardy County.

Suit by C. C. Wise, administrator with the will annexed of
Benjamin D. Hinegardner, deceased, and others, against
Charles F. Hinegardner and others.   From a decree for de-
fendants, plaintiffs appeal.

*Affirmed.*

*G. W. McCauley,* for appellants.
*M. W. Gamble,* for appellees.

LIVELY, JUDGE:

Benjamin D. Hinegardner died testate in the year 1922, leaving personal property worth about $15,000.00 and real estate consisting of about 933 acres worth about $20,000.00. This suit was instituted by his administrator with the will annexed, seeking to have the will construed, and asking directions from the court in the proper discharge of his duties thereunder.

Item 2 of the will disposes of the estate, with the exception of $500.00 given to a religious organization by item 1, and furnishes the basis of the controversy. Item 2 is as follows:

"I desire that all my estate both personal and real shall be divided share and share alike among my six children to-wit; Sallie C. Stultz, the wife of Frank Stultz, John S. Hinegardner, Ida F. May, the wife of Lee May, Jacob D. Hinegardner, Nettie A. Garrett, the wife of Charles Garrett, and Chas. F. Hinegardner, as hereinafter set forth. And in the event that any one of my said children die with issue, then living, or born within ten months from said parent's decease, said parent's share will go to said child or children as the case may be. But in the event that any one of my children leave no issue as aforesaid, then that child's share shall revert to my surviving children and the issue of such as then may be dead, unless my estate shall have been distributed and that child's portion left by him or her will otherwise.

"In the event that some children desire to hold the whole or a portion of the home place here I desire that those who do not desire to remain shall sell their interests to those who do in preference to any other person or persons at the same price that can be obtained elsewhere. And in the event that none desire to remain that then my executors hereinafter named shall sell all my real estate and divide the proceeds of all my estate between said children, after deducting my burial expenses, debts and expenses of the execution of this will: With the express understanding that my children shall only have a life estate, each in his or her portion; and that the children of each child shall inherit the said child's share in fee simple. And in the event that sale shall be made that my execu-
97, W. Va.

tor or the survivor shall invest the amount due each child, with the reversion as aforesaid. I further desire that in the event that some retain the home and others do not, that the proceeds of all my property shall be so invested as to secure the fee simple title to my grand children."

The decree appealed from pronounced November 1, 1923, construes the will to give a life estate to the testator's immediate children in both real and personal estate with remainder over to his grandchildren, with power in any of the children to sell his or her interest in the real estate in fee to a purchaser, the purchase price thereof to be paid to the administrator with the will annexed and by him to be invested in real estate with life estate therein to the child so disposing of his or her share, remainder over to his or her children. In the event that none of testator's children desire to retain their interest in the real estate, the administrator is directed to sell all of it and invest the proceeds in other real estate either as a whole or in separate parcels for each of decedent's children, upon death to pass to their children as remaindermen. If any child sells his or her interest no duty devolves on the administrator to fix the price or terms. Leave is given to the parties to apply to the court for further directions in carrying out the decree.

The administrator and testator's children appeal.

The administrator complains that while he is authorized to distribute the personal estate to the children who take a life estate therein, no means has been provided by which he or the remaindermen can be protected against dissipation and loss in the hands of the life owner. He also complains of the decree in that it does not direct in whom the title shall be vested in the event that he is required to invest in other real estate the purchase price of any or all of the testator's real estate; which may come into his hands.

Assuming that the decree has correctly interpreted the intention of the testator as to the beneficiaries of his bounty and the estate which each takes (an assumption which the administrator must make, he not being concerned as to the interest which each shall take), the first assignment of error by the administrator is denied by *Trust Co.* v. *Arnett*, 74 W. Va.

127. The will does not require the life tenant of either real or personal estate to give bond to preserve the corpus for the remaindermen. Nor do we have a statute requiring such security. Some of the States do have such statutory requirements. Duval's Appeal, 38 Pa. St. 112. To require security of the life tenant would add a burden not contemplated by the will and not authorized by statute. If there be apparent danger of loss or dissipation a court of equity may meet the situation and protect the rights of the parties against the danger. There is nothing in this case which intimates such danger; and the decree accords to any party the right to ask for any further order necessary to carry it out. On the administrator's other assignment, namely, in whom shall be vested the title of any real estate purchased by him under the directions of the will; it may be suggested that specific direction may be obtained from the circuit court, if he desires it. The decree is clear that the interest of the child of the testator in the real estate which the administrator may purchase under the will, is a life estate, with remainder over to the children of that child. No difficulty is perceived in the preparation of a deed in conformity with the decree.

The children of the testator, who are the other appellants, say the decree does not properly construe the will in that it decrees that they have and take a life estate in both personalty and real estate with remainder to their children, the testator's grandchildren. All of their assignments of error revolve around this interpretation and arise from it, except the fourth assignment which is similar to the first error assigned by the administrator, and is to the effect that the decree is bad because it directs distribution of the personal estate to them (appellants) without protecting the administrator against possible future claims by decedent's grandchildren. Their solicitude for the protection of the administrator is answered above; and if they desire to protect him against possible future claims of the grandchildren they could do so voluntarily.

But the crucial question is the kind of estate which the legatees and devisees respectively take under the will, and to this controlling question we now come. It is not easy of solution. It appears from the answers to the administrator's

bill that four of testator's children have elected to hold their interests in the real estate; and that Ida F (Hinegardner) May has agreed to purchase the interest of John S. Hinegardner, her brother, for $3,750.00 on terms, and Chas. F. Hinegardner has agreed to purchase the interest of Jacob D. Hinegardner, his brother, for $3,750.00 on terms, provided the vendors can give fee simple titles to their interests; that is, two of testator's children have contracted to sell on agreed price and terms their interests in the real estate to two of the testator's other children, provided they can convey in fee simple. The testator foresaw that some of his children would desire to sell their interests, and requested that those selling should give those remaining the preference in the purchase if they were willing to give a price obtainable elsewhere. He attempted to provide for such situation. But what can these two children sell? If they have a life estate only, that interest could be alienated without authority from the will to do so. Clearly he intended that the fee simple interest to the share of each child in the land could be disposed of by each child for he has provided that the proceeds should be invested by the executor in other real estate with a life estate therein to the child who sells, remainder in fee simple to the children of that child. If a share be converted into money, that money takes the place of the share in the scheme of devolution. It is argued by counsel for appellants that this power of sale in each child of a one-sixth interest in fee raises the life estate (if a life estate was intended), to a fee; and *National Surety Co.* v. *Jarrett,* 95 W. Va. 420, 121 S. E. 291; *Woodbridge* v. *Woodbridge,* 88 W. Va. 187; *Crutchfield* v. *Greer,* 113 Va. 232; *Taylor* v. *Johnson,* 114 Va. 329, and other Virginia cases are relied upon. These cases follow the well established principle that where a life estate is given coupled with an unequivocal power of sale the latter generally prevails elevating the life estate into a fee. That principle applies where the power of alienation is for the benefit of the owner of the life estate. In the *Woodbridge* case, cited, the power to sell given the husband for his benefit was construed not to change his life estate but to enjoy the income from the proceeds derived from the sale, the corpus of the estate in its changed form still belonging to the remainderman. The context of the

clause in which the power of sale was given impelled that construction. An absolute power to sell necessary to raise a life estate to a fee would carry with it the right and power to use the proceeds as the seller might choose. There is no such right given here, on the contrary, it is reasonably clear that the testator intended that the corpus of the proceeds should go to the remaindermen. If the testator intended his children to take life estates in his realty with power to sell, the proceeds to be reinvested in real estate with remainder over, the power to sell is a naked power, and is not such absolute power as would convert the life estate into a fee with the concomitant right to use the proceeds as the devisee might see fit. The purchaser takes a fee to the share, but the purchase price goes into the hands of the executor taking the place of the land in the testator's scheme of devolution. Where a life estate is intended in the first taker, a power of disposition coupled with the gift should be limited in construction in accordance with the evident purpose. *Chase* v. *Ladd,* 153 Mass, 126; *Mansfield* v. *Sheldon,* 67 Conn. 390; 52 Am. St. Rep. 285; *Stout* v. *Clifford,* 70 W. Va. 178.

Appellant's counsel contends also that the testator having given all his property to his six children and to their issue if any, and if none, over to his other children or their descendants; (unless after distribution of the estate a child should die without issue in which event he could dispose of his share by will), he created an estate tail in each, which, under the statute, is raised into a fee. It is argued that the event in which the executor may sell the land and invest the proceeds with life estate in the six children and remainder over, namely, *none* of the children desiring to remain on the land, has not happened and may never happen, hence the children and their issue take a fee tail estate which the statute, Sec. 9, Chap. 71, Code, raises to a fee. The argument tersely stated, as we understand it, is that appellants have a fee simple estate in the land until such time when they all desire to sell the lands. In no part of the will do we find the words "give," "devise" or "bequeath," except in item one which uses these words in the bequest of $500.00 to the Church of the Brethren. It will be observed that item 2, under consideration, and which disposes of the property, real and per-

sonal, says that it shall be divided share and share alike
among the six children, naming them, "*as hereinafter set
forth.*" The division shall be equal, but the character of
estate each shall take must be determined from what follows.
It cannot be questioned that if an estate be given by will or
deed to one for life, and after his death to the heirs of his
body, a life estate is vested in him for life and remainder in
fee simple to the heirs of his body. Sec. 11, Chap. 71, Code.
The latter portions of item two creates estate for life with
remainder over, and we do not think the question of estate
tail can arise. *Martin* v. *Martin*, 52 W. Va. 381. A study
of item two impresses upon the mind that the intention of
the testator was to give his entire estate to his six children
in equal shares with remainder over to his grandchildren.
When the intention is ascertained any arbitrary rule of in-
terpretation applicable to any of its parts must yield to the
intention. If an inspection of the entire will reveals the in-
tention the problem is solved. After designating that his
entire estate be divided into six equal parts among his chil-
dren, the testator immediately directs that if any of them
die without issue then living or born within ten months after
the parent's decease, the share of that parent shall descend
to that parent's child or children; but should there be no
child that share shall go to the deceased's brothers and sis-
ters and their descendants, unless there has been a distribu-
tion in which case the child which has no issue has power
to dispose of the share distributed to him by will, thus divert-
ing the inheritance from passing to the brothers and sisters
and their descendants. The power of disposition of the re-
mainder by will coupled with the life estate is accorded to
that child who has received his distributive share and who
dies without issue. Only these children who die without
issue can dispose of the remainder by will. These provisions
strongly evidence the intention to give testator's children life
estates in the shares divided among them. He does not say
so in terms; had he done so, construction would be unnec-
essary. "A devise, whether absolutely or for life, will be
raised by implication where the text requires it and the devise
is not in express terms. Thus the gift of the rest and residue
of one's estate to his children after the death of the wife

creates a life estate in the wife by implication." 1 Schouler on Wills (5th Ed.) page 721, Sec. 561. The testator then expresses the desire that those who do not desire to hold all oɳ a portion of the home place will give preference in the purchase of their *interests* to those who do remain. The power of sale, not expressly given, but necessarily implied, is not inconsistent with the intention to vest a life estate only in the seller, as hereinbefore discussed; for we find that by the last sentence in item two, it is made clear that the proceeds shall be invested so as to secure the fee simple title to the grandchildren, in the event that some of the first takers desire to sell the home and others do not. These two provisions are closely allied; in one the power of sale is impliedly given with the expressed wish for preference in the sale to the children who retain the home lands; in the other, conservation of the proceeds of sale for the benefit of the remaindermen. It is clear that no right is given to the seller to appropriate the proceeds to his exclusive use and benefit. These provisions do not create a fee tail, and are not persuasive of intent to create a life estate in the first takers coupled with absolute and unequivocal power of sale of such character as to elevate it into a fee. On the contrary, they accentuate the implication found in the first part, that the immediate children take a life estate in the entire estate with remainder over to their issue, or if there be no issue, then to the brothers and sisters and to the descendants of those who may have died.

It is pointed out that the last sentence: "I further desire that in the event that some retain the home and others do not that the proceeds of all my property shall be so invested as to secure the fee simple title to my grandchildren," is in conflict with the other parts, especially that portion which contemplates that some will retain the home place or a portion thereof. How could the proceeds of *all* the property be invested for the benefit of the remaindermen in that event? It is therefore argued that this last sentence evinces a confusion in the testator's mind; that the provision is uncertain in meaning, and impossible of application until the time when the event has happened which calls upon the executor to sell the entire real estate; that is, when none of the children desire to remain. A will should not be read so as to contradict itself.

If the apparent contradiction can be harmonized or reconciled the courts should do so deducing a consistent interpretation from all the words and clauses used. It is often held that if parts of a will are repugnant the later part should prevail over the earlier part. This is the seventh rule promulgated by Jarman, namely, "That all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail." 1 Schouler on Wills (5th Ed.) note to Sec. 492, page 619. This rule should be applied after all efforts at reconcilement have failed. To apply it here, on the theory of irreconcilable conflict, would sustain the decree. But is there any real repugnancy in this last sentence with other portions? How can they be harmonized? There is no part of the will by which it may be ascertained that preference is to be given to any one of the six children in the character of the estate given them. They "share and share alike." Some may retain the home lands, others may wish to sell. Those who sell are not penalized and their interests reduced; neither are they enlarged; the price they receive is still impressed with a remainder over after the life estate therein is terminated; thus retaining parity and equality in estate with those who do not sell, and who have life estates in the home lands with remainder over. If none desire to retain the lands, the proceeds follow the same course standing in place of the land; and then investment is to be made by the executor in other real estate, with life estate to the first taker, remainder to the same persons who would take if there had been no sale. This appears to be the scheme; and the last sentence may be harmonized therewith. If some sell and others retain the home place the *proceeds* of that sold must be invested so as to secure the fee simple title to the grandchildren. There would be no proceeds from the interests retained by those who do not sell. This construction will harmonize with the other parts of the will and give effect to all the language used. "Where in a will testator makes use of language which, according to one construction thereof, would be in conflict with a previous provision in the will, but according to another construction, of which the language is equally suscept-

ible, would be in accord with the former provision, the court will adopt the latter construction, to the end that all of the provisions of the will may be made harmonious, and the language used by the testator given effect." *Woodbridge* v. *Woodbridge,* 88 W. Va. 188.

The disposition of the personal estate is the same as that of the real estate. The two classes of property are inseparably interwoven in the scheme and are treated of alike. If the executor sells the real estate in the event that none of the children desire to retain it, he is directed to divide the "proceeds of *all* my estate" in the manner therein set out with the estate to the first takers, remainder over; and in the last clause he directs "that the proceeds of *all my property* shall be so invested as to secure the fee simple title to my grandchildren." The various "events" named upon the happening of which specific directions are given, and setting out the estate which the beneficiaries take, all evidence the intention to create a life estate in the children in the entire property, with remainder over. The learned Judge of the Circuit Court construed the will in accordance with the conclusion above indicated; and the decree will be affirmed.

*Affirmed.*