# CHARLESTON.

Mary Smith Underwood v. Mary Belle Myer, *et al.*

(No. 6116)

Submitted February 19, 1929.  Decided February 26, 1929.

*I. M. Underwood,* for appellant.
*Homer Strosnider,* for appelle.

Hatcher, Judge:

In February, 1919, the plaintiff (then Mary Smith) and her husband, Perry Smith, executed a joint will which contains the following provision:

"We hereby will and bequeath to Mary Belle Myer all of the land, real estate and appurtenances thereto belonging, of which we, or either of us,

> may die seized or possessed, but the said real estate and appurtenances thereto shall not pass to the said Mary Belle Myer so long as either of us, the said Perry Smith or Mary Smith, shall live, but after the death of the last survivor of this will the said real estate shall pass to and be held by the said Mary Belle Myer in fee."

Mary Belle Myer, the beneficiary in the will and the defendant here, is the only child of the testators. Perry Smith died in April, 1921, at which time he and his wife were the joint owners of a tract of 30½ acres upon which the defendent Hope Natural Gas Company had a lease. In May, 1921, the will was probated as that of Perry Smith. The defendant was then appointed agent to receive the royalties under the lease and pay them to the plaintiff, which she did until 1925.

In 1926 plaintiff instituted this suit, seeking a construction of the above clause of the will, and the payment to her of accumulated royalties. The defendant tendered an answer which corrected the bill in minor particulars, set up the remarriage of the mother in January, 1925, to Jesse Underwood, alleged the revocation of the will as to the mother for that reason, and prayed for a cancellation of the will. The lower court rejected the answer of defendant, heard the cause upon the bill and exhibits, and decreed that the plaintiff should be paid the accumulated royalties, and should receive during her lifetime all rentals and royalties paid under the lease.

The plaintiff asserts that the will is valid as to Perry Smith and equally valid as to herself because of her acceptance of its benefits.

The defendant contends that the will is not valid because it is joint and mutual, relying upon the case of *Walker* v. *Walker*, 14 Ohio St. 157, 82 Am. Dec. 474, and decisions concurring therewith. That case, decided in 1862, fully supports her contention. However, it was "limited" by the case of *Betts* v. *Harper*, 39 Ohio St. 639, decided in 1884; it was ignored in *Minor* v. *Minor*, 15 O. D. 264, and it was disapproved in effect in *Coghlin* v. *Coghlin*, 16 O. C. C. 18,

both decided in 1904 and both upholding the validity of joint and mutual wills. The later Ohio decisions have simply followed the trend of modern authority. The history of such wills is concisely told in 28 R. C. L., p. 167, section 122. "When mutual and joint wills were first considered by the English courts, they were disapproved and the earlier American decisions also pronounce against them; but the more modern views of the courts of both countries sustain the validity of such wills and declare that they are not contrary to public policy." Accord: 30 A. & E. Ency. Law. 556; 40 Cyc., p. 2113, section c; Alexander on Wills, Vol. 1, section 77; Schouler on Wills, etc., (5th ed.) Vol. 1, section 456; Page on Wills, section 86; Redfield on Wills (2nd ed.), Vol. 1, p. 156 (*182) section 24; Jarman on Wills (6th ed.), Vol. 1, p. 41. Further citation of authority is unnecessary on a doctrine which the annotation in 2 A. & E. Ann. Cas. 26, say "is beyond question."

A mutual will ordinarily becomes irrevocable after the death of one of the makers if the survivor takes advantage of the provisions made by the other. *Frazier* v. *Patterson*, (Ill.) 90 N. E. 216, and authorities there cited. But defendant contends that under section 6, Chapter 77, Code, the will here is revoked as to the plaintiff by her marriage to Underwood, and has therefore lost its mutuality. Its statutory revocation is of little consequence in this case. The reciprocal provisions of the will evidence that the will was the result of a contractual agreement between Perry Smith and the plaintiff. *Hermann* v. *Ludwig*, 174 N. Y. Supp. 469; *Frazier* v. *Patterson, supra; Campbell* v. *Dunkelberger*, 172 Iowa 385, 390; *Bower* v. *Daniel*, 198, Mo. 289, 320, 95 S. W. 347. By that arrangement each party to the will agreed to make a testamentary disposition in favor of the survivor with remainder to the defendant. The provision for the one was the inducement of the provision for the other. *Frazier* v. *Patterson, supra; Stewart* v. *Todd*, 190, Iowa 283, 291-2, 20 A. L. R. 1272; *Wright* v. *Wright*, 215 Ky. 394. That reciprocal agreement became a *fixed obligation* upon the death of Perry Smith and the acceptance by the plaintiff of the testamentary benefits accruing to her from that arrange-

60

ment. *Edson* v. *Parsons*, 155 N. Y. 555, 566. She has become legally bound to execute her part of the agreement. Equity will enforce her obligation, by impressing a trust on her estate in favor of the beneficiaries of the will. 40 Cyc., p. 2117. *Tooker* v. *Vreeland*, 92 N. J. Eq. 340, 342, says: "There is a wealth of authority for the relief and the remedy." Woener regards the doctrine as "incontrovertible on principle and sanctioned by the current of English and American decisions." Am. Law of Administration (3d ed.) p. 74, sec 37. "Where mutual or reciprocal wills have been made pursuant to an agreement which has been executed by one of the testators dying without having made any different testamentary disposition of his property, and the other has accepted the benefits accruing to him under the will of the deceased, the agreement becomes obligatory upon the survivor and may be enforced in equity against his estate." *Brown* v. *Johanson*, 69 Colo. 400. Accord: Schouler, *supra*, sec. 458a; Alexander, *supra, sec.* 89; Page, supra, sec. 88; 28 R. C. L., p. 172, sec. 129.

The decree of the circuit court is accordingly affirmed.

*Affirmed.*