# Wytheville

## R. WALTON MOORE, ETC. V. HARRY M. HOLBROOK AND OTHERS.

June 10, 1940.

Record No. 2238.

Present, All the Justices.

The opinion states the case.

*John S. Barbour* and *James Keith,* for the appellants.

*Caldwell C. Kendrick, Robert E. Lynch, James H. Simmonds* and *Ernest T. Gearheart, Jr.,* for the appellees.

GREGORY, J., delivered the opinion of the court.

Minnie B. Holbrook died leaving a last will and testament, which was written in her own hand. It was probated July 17, 1937, and is as follows:

"After all my just debts are paid, I will give and bequeath all my property both real and personal to my beloved husband Stockton S. Holbrook—All money due me from the government shall be his, and he is to put in claim for said money—One Liberty bond, I now hold is to be his, & he shall put in claim for said bond—He is to dispose of said property as he sees fit—If he chooses to sell it he may do so, in order he may be able to use it for his comfort. Should there be any thing left after his death I desire it to be given to the cemetery for the upkeep of our lot—I desire our names be put on the monument on our lot. The name of our infant child buried there also to be cut on said monument—The names will be found in the family Bible upstairs.

"There is a Silver bread tray, a cut glass bowl, & 1 half dozen side dishes & plates given me by Mrs. Ethel Wiley. I wish her daughter Dorothy Roland to have these, provided my said husband still has them in his possession at his death, my husband Stockton S. Holbrook is to be sole executor—No administrator is to be appointed. He shall handle all affairs—This is my own hand-writing.

"Given under my hand this 10th day of September, 1929. Minnie B. Holbrook."

The testatrix was survived by her husband, Stockton S. Holbrook, and several brothers and sisters, her heirs at law. Her only child had predeceased her and was buried in a cemetery lot which had been purchased from the Fairfax Cemetery Association.

Two months after the death of the testatrix, her husband, Stockton S. Holbrook, died without having disposed of the estate during his lifetime, but he left a will which was duly probated, and in which he bequeathed all of his estate to his wife, Minnie B. Holbrook. This bequest, of course, lapsed because Mrs. Holbrook had predeceased him.

Stockton S. Holbrook left surviving him a brother and sister and nieces and nephews as his heirs at law, and they are the appellees here. All necessary and proper parties were before the court.

It was alleged in the bill of complaint which was filed by the appellants, the trustees of the cemetery association, that by the will of Minnie B. Holbrook, her husband, Stockton S. Holbrook, took a life estate only with power to dispose of the estate for the purposes stated in the will, with remainder of the estate which had not been disposed of to the surviving trustees of the cemetery association.

The heirs at law of Stockton S. Holbrook filed a demurrer to the bill. They claimed that the will of Minnie B. Holbrook vested in her husband an absolute fee in all of her estate and that the remainder over to the trustees of the cemetery association was void. The cause was heard upon the pleadings and the demurrer was sustained. The bill was dismissed but the cause was retained in order to settle the two estates.

The present appeal, as already indicated, presents a question of law, which is whether Stockton S. Holbrook took only a life estate under the will of his wife with power of disposal or whether he took an absolute fee in her estate. If he took only a life estate the remainder over to the trustees of the cemetery association would be valid under Code, section 5147. If he took an absolute fee, section 5147 would not apply and the remainder would be void because repugnant to the fee.

A great deal has been written about the effect of (1) a remainder over after an estate for life coupled with power in the life taker to dispose of the estate, and (2) the effect of a remainder over after an estate given in general terms (i. e., where technical words, as "fee simple," "and his heirs," etc., are not used), with power of disposition.

In Virginia, prior to the Act of 1908 which amended section 2418 of the Code of 1887, a devise for life, or generally, with absolute power of disposition of the estate, created a fee simple by implication in the first taker, and

a remainder over of whatever was left at the death of the first taker was void.

The reason advanced for that view was that an unqualified power of disposing of property, conferred by will, should ordinarily be considered as a gift of the property. Thus Judge Tucker in the early case of *Burwell's Ex'rs* v. *Anderson*, 3 Leigh (30 Va.) 348, said: "In this the law but corresponds with the dictates of common sense. Every man of ordinary capacity would understand a power to dispose of a thing as he pleased as a gift of the thing itself; hence every one who uses the phrase without qualification is understood by the law as intending a gift. The power of absolute disposition has indeed the eminent quality of absolute property. He who has the absolute property has inseparably the absolute power over it, and he to whom is given the absolute power over an estate acquires thereby the absolute property, unless there is something in the gift which negatives and overthrows this otherwise irresistible implication."

Judge Harrison in his work, Wills and Administration, Volume 1, section 243 (5), says that from a gift in general terms with a power of disposition, the implication of a fee is much more readily drawn than in the case where there is an express gift of a life estate to which is added the power of disposition. In the first case although the power of disposition might seem to be a limited power, yet it will not be construed a life estate if any other reasonable construction can be made.

The general language used in the will in the case at bar: "I will give and bequeath all my property both real and personal to my beloved husband," created in Stockton S. Holbrook a fee simple estate. The sentence, "He is to dispose of said property as he sees fit," simply emphasizes the absolute control of the estate. Under this language he could actually consume the corpus. Down to this point in the will all of the language discloses a clear intention on the part of the testator to give her husband a fee in the estate. Then follows this sentence: "Should there be anything left after

his death I desire it to be given to the cemetery for the upkeep of our lot."

The cemetery association was not a natural object of the testatrix's bounty. The husband survived the testatrix only two months and during that time he did not dispose of the estate. If the appellants prevail the intention of the testatrix to give her property to her husband in fee will have been frustrated and all of it will go to the appellants for the upkeep of a cemetery lot.

The silver bread tray, cut glass bowl, and dishes, if the husband still has them at his death, the testatrix wished to go to Dorothy Roland. We do not think that this wish manifests any intent on the part of the testatrix to limit or curtail the absolute estate she had already unqualifiedly given her husband in all of her property.

The clause relied upon as creating the remainder over is ambiguous. We cannot ascertain from the will whether the testatrix intended to give to the cemetery association all of her estate or just enough to take care of the upkeep of the lot. If only enough to take care of the lot were intended to go to the cemetery association, then any surplus would become intestate property. The well-established rule of construction is that the terms or language necessary to rescind or cut down an estate previously created and given must be at least as clear and decisive as the terms or language by which the estate was previously created. If a prior estate in fee is to be cut down to a life estate or taken away altogether by subsequent language it must be by express words or by compelling implication. It cannot be done by ambiguous or doubtful language. *Wornom* v. *Hampton Normal and Agricultural Institute*, 144 Va. 533, 132 S. E. 344.

We think a reading of the entire will demonstrates that the prime motive and dominant purpose of the testatrix was to give all of her possessions to her husband in fee. This being true these apt expressions of Judge Harrison in Volume 1, section 243 (6) of his Wills and Administration apply: "Wherever by construction an estate in fee is found

to have been created by the will, all remainders and limitations over are necessarily void. One of the inseparable incidents of a fee simple is that no restriction can be imposed upon the estate. This does not mean that some other kind of an estate may not be created as to which remainders and limitations are properly applicable, but where the estate is an estate in fee, any attempt to limit or restrict the rights of the owner thereof in said estate are repugnant to his estate and are void. It has, therefore, been held in all the decisions in Virginia and West Virginia that where any restriction upon the right of the owner to alienate the fee or to control the disposition of any portion of the estate exists in the will, it is void as being repugnant to the estate of the tenant in fee. Thus, if a fee be given and a limitation is made of what may remain undisposed of at the death of the tenant in fee, such limitation is void, because it is repugnant to the estate of the tenant in fee. The same is true as to restraints on alienation."

The amendment of 1908 to section 2418 of the Code of 1887 was radically changed by the Code revisors of 1919 (Code 1919, section 5147). The amendment of 1908 applied to "any estate," whether for life or in fee, and permitted a valid remainder, even after a fee, if power of disposition, where granted, was not exercised and there remained anything after the death of the devisee. *Southworth* v. *Sullivan*, 162 Va. 325, 173 S. E. 524. This was so unsatisfactory to the Code revisors that they changed the amendment and by section 5147, as revised, limited the remainder over to cases where there was only an express estate for life. Therefore, subsequent to the revision of 1919, except where there is an express estate for life, the remainder is void just as it was prior to the amendment of 1908.

The present section (5147), which was effective at the time of the testatrix's death, reads in part as follows: "If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be con-

ferred expressly or by implication a power upon the life tenant in his life time or by will to dispose absolutely of said property, the limitation in remainder over, shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal."

Judge Burks, one of the revisors, in commenting on the change said: "Perhaps no statute in Virginia has been the subject of more speculation as to its meaning than the act of 1908 amending section 2418 of the Code of 1887, the primary object of which amendment was to abolish the rule commonly known as the doctrine of *May* v. *Joynes* [20 Gratt. (61 Va.) 692]. The revisors redrafted the amendment, and have sought to improve its phraseology. Its meaning also has probably been changed. The revised section is expressly restricted to devises and bequests for life, with absolute power of disposition. The act of 1908 did not contain the words 'for life' and the language was broad enough to apply to a class of limitations which was probably not intended to be affected by the act." Judge Burks' Address on the Code of 1919, 5 Va. Law Reg., N. S., 97, 109.

Thus it is made clear that as to a remainder over after a fee simple or an estate in general terms the law is as it was prior to 1908, namely, the remainder is void because repugnant to the fee.

Section 5147 of the Code has no application here because we are not dealing with property "disposed of by deed or will for life." Here the estate was granted in general terms by language that unmistakably implied an estate in fee.

We will not undertake to refer to all of the cases cited in the briefs; *Skinner* v. *Skinner's Adm'r*, 158 Va. 326, 163 S. E. 90, and *Whitehead* v. *Whitehead*, 174 Va. 379, 6 S. E. (2d) 624, are the latest.

In *Skinner* v. *Skinner's Adm'r*, *supra*, we held that the language "and that upon her death such remaining part of this bequest as she shall die possessed of, if any, shall revert to my estate" did not reduce to a life estate the fee created by implication in the first taker; that Code, section 5147, had no application because the first estate was not one

for life; and that the reverting clause was void because repugnant to the fee. We also held that the revisors accentuated the words "for life" which are of "pivotal importance in section 5147, furnishing it vitality in changing the meaning of the act of 1908." And speaking of the testator's intention to have what remained of the property revert to the estate the court observed that "he undertakes to accomplish something that the law does not allow." In other words, if the intention of the testator, which is always of primary importance in the construction of wills, runs counter to a well-established principle of law, the intention must yield.

We think it can fairly be said that the paramount intent of Mrs. Holbrook was to give her husband all of her property in fee simple, which of course would include the complete dominion and control of it. The power of disposition added nothing nothing to the fee simple estate. If she intended to limit the fee by subsequent language and to create a remainder to the cemetery association, the latter intent must yield to the paramount intent, which clearly was to give all to Mr. Holbrook in fee. The remainder was necessarily repugnant and void.

In *Whitehead* v. *Whitehead, supra,* the devise was expressly in fee but afterwards there was an attempt to engraft limitations by certain other provisions in the will. We held that Code, section 5147, had no application and that Mrs. Whitehead took a fee. The limitations were void for repugnancy. The law as established by innumerable decisions of this court,, unaffected by section 5147, was applied. That law is as valid and applicable today as it was before the legislature attempted to abolish the doctrine of *May* v. *Joynes* in 1908 in all cases except where a life estate is granted the first taker.

It is insisted with great earnestness that the decision here should be controlled by the case of *Miller's Adm'r* v. *Potterfield,* 86 Va. 876, 11 S. E. 486, 19 Am. St. Rep. 919, but as stated in *Trice* v. *Powell,* 168 Va. 397, 191 S. E. 758, the *Miller Case* has been overruled by *Hansbrough* v. *Trustee*

*of Presbyterian Church,* 110 Va. 15, 65 S. E. 467. Many other decided cases have repudiated the holding in the *Miller Case.* That case has not been authority in Virginia since the decision in the *Hansbrough Case.*

We are not unmindful of the rule that in construing a will effect must be given to each and every part of it and conflicting provisions must be reconciled if possible in order to carry out the intent of the testator, but this rule of construction will not be allowed to destroy a "canon of property" which forbids a testator to create a fee in the first taker and then attempt to engraft thereon a remainder of what might not have been consumed or otherwise disposed of by the owner of the first estate. This follows not because the court fails to perceive the intent of the testator, but because any limitation over after an absolute fee is "against the law." *Southworth* v. *Sullivan, supra* [162 Va. 325, 173 S. E. 526].

Our conclusion being that the late Stockton S. Holbrook took a fee simple in the entire estate of Minnie B. Holbrook under her last will and testament, it follows that the appellees, his heirs at law, are entitled by inheritance to the estate. The decree will accordingly be affirmed.

*Affirmed.*

HOLT, J., dissenting.

Since no weight has been attached to the manifest wishes of the testatrix expressly written into her will, I must dissent.

There is nothing ambiguous about it. The comfort of her husband, the first taker, was first in her mind. He was to use the estate "for his comfort." At his death such as was not so used was "to be given to the cemetery for the upkeep of our lot—I desire our names to be put on the monument on our lot. The name of our infant child buried there also to be cut on said monument—The names will be found in the family Bible upstairs."

No life estate was given *eo nomine,* but by it the first taker's interest in that on hand terminated with his life. If the estate can be none other than a life estate that is enough. That it should be defined in express terms as such is not necessary. Lest we forget, I vouch the statute:

"If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his life time or by will to dispose absolutely of said property, the limitation in remainder over, shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal; provided, however, that a deed of trust or mortgage executed by the life tenant shall not be construed to be an absolute disposition of the estate thereby conveyed, unless there be a sale thereunder." Code, section 5147.

If a gift to A for life with power to consume the corpus, if necessary, and at his death such as may remain to B, be good, then there is no sound reason for holding that a gift to A with power to consume the corpus, if necessary, and at his death such as may remain to B, is not good.

Any description of any estate which is intelligible will do. No magic formula is needed if he who runs may read. The legend, "life estate," is no more essential than "fee simple."

In each instance the first taker's interest in what was left died with him. In it he had a life estate.

This testatrix did what might have been expected. First in her mind was her husband and his comfort and next the care of that lot in which she had placed her dead daughter and to which she and he were to come. This close, consecrated as she saw it, was an object of her bounty, more appealing than collateral kin, unnamed and probably unremembered, and certainly more appealing than any claim which her husband's collateral kin might have had upon her.

It may be conceded that the court's opinion finds support in some of the authorities cited, but if the rule of *stare decisis* be rigorously enforced error once committed is irremedial and in the amber of decided cases may be preserved forever.

After all, a judicial decision is not law but merely evidence of law. In theory at least it is but a restatement of what was the law before that restatement was made.

Here no purchaser for value has been misled, and if these defendants take nothing, nothing which they have had has been taken from them. They have been misguided by no canon of construction.

As I see it, trouble has come about in this way: We have construed strictly a remedial statute and have thereby defeated one of its purposes and at times the plain purpose of a testator. We are tangled in a web which we ourselves have woven.