*In Re:* ESTATE OF FRANK REED, *Deceased,* GAYLE REED HILTON, FRANCES REED BERRY AND HARRY REED

(No. 9415)

Submitted April 6, 1943. Decided April 27, 1943

Fox, JUDGE, dissenting.

*S. M. Noyes* and *A. E. Bryant,* for plaintiff in error.
*Alan McKee,* for defendant in error.

LOVINS, JUDGE:

The County Court of Ohio County admitted a writing to probate as the last will and testament of Frank Reed. On appeal under Code, 41-5-7, the circuit court held the writing to be the true will of Frank Reed, granted probate thereof, and the proceeding comes here for review.

Frank Reed and Lillian Reed, his wife, on October 5, 1928, went to the office of an attorney-at-law of Enid, Oklahoma, employed him to draft their wills, and in-

formed him that they desired all their property to go to the survivor except some minor legacies to the five children of Frank Reed. They remained in the attorney's office during the preparation of the wills, and upon completion thereof each then and there signed their respective wills in the presence of the same witnesses.

The will of Frank Reed, omitting the attestation clause reads as follows:

"I, Frank Reed, of Garfield County, State of Oklahoma, *beginning* now in good health, strength of body and mind, but sensible of the uncertainty of life and desiring to make disposition of my property and affairs while in good health and strength, do hereby make, publish, and declare the following to be my last will and testament hereby revoking and cancelling all other or former wills by me at any time made.

"1. I direct the payment of all my just debts and funeral expenses as soon after my decease as may to my executrix hereinafter named, seem proper.

"2. I give and devise to my son, Jimmie Reed, the sum of five dollars, ($5.00) in cash.

"3. I give and devise to my daughter, June Reed, the sum of five dollars, ($5.00) in cash.

"4. I give and devise to my daughter, Gayle Reed, the sum of five dollars, ($5.00) in cash.

"5. I give and devise to my son, Harry Reed, the sum of five dollars, ($5.00) in cash.

"6. I give and devise to my daughter, Frances Reed, the sum of five dollars, ($5.00) in cash.

"7. After the payment of all of said just debts and funeral expenses, and the legacies hereinbefore mentioned, I give, devise and bequeath unto my beloved wife, Lillian Reed, all of the rest, residue, and remainder of my property, both real and personal, including choses in action, and wheresoever found; she to take absolute title to said property to have the authority to use, sell, or dispose of any or all of said property in whatever way she may desire.

"8. I hereby appoint and designate my said

wife, Lillian Reed, sole executrix without bond, of this, my last will and testament.

"In Witness Whereof, I, Frank Reed, have to this my last will and testament consisting of two (2) sheets of paper, subscribed my name this —— day of October, 1928.

FRANK REED."

The will of Lillian Reed is identical except that Gayle, Frances, and Harry Reed are described as her stepchildren and Frank Reed is made residuary devisee and legatee, and named as executor.

Lillian Reed was a resident of Ohio County and owned real and personal property therein at the time of her death, which occurred March 24, 1939. She left surviving her husband and daughter, June Reed, as next of kin, Jimmie Reed having pre-deceased her. Lillian Reed's will was admitted to probate in Ohio County, April 25, 1939.

Frank Reed died October 24, 1939. Surviving him are four children: Harry Reed, Gayle Reed Hilton, and Frances Reed Berry, children of a former marriage, and June Reed, a child of his marriage to Lillian Reed, these children being four of the legatees in the wills of Frank and Lillian Reed.

It appears from the deposition of E. L. Swigert, the attorney who drafted the wills, that Frank and Lillian Reed were familiar with the contents of both wills, that there was a mutual understanding and agreement that all of their property should go to the survivor except the small legacies. He further testified that there was no agreement that the execution of one will should be the consideration for the execution of the other.

This controversy arose by reason of the conflicting claims of June Reed, the only surviving child of Lillian Reed, and the other three children of Frank Reed. If the testamentary writing executed by Frank Reed on October 5, 1928, remained effective after the death of Lillian Reed, her daughter, June Reed, under Code, 41-3-3, takes the entire estate of Frank Reed, except the legacies to

her brother and sisters of the half blood; but if the will of Frank Reed was rendered inoperative by Lillian Reed's demise, the four surviving children of Frank Reed will take equally as his heirs and distributees under the statutes of descent and distribution.

Development in this jurisdiction of the law with reference to joint wills and mutual wills with reciprocal provisions is recent, and although the words descriptive of such testamentary instruments serve, in a measure, to define them, confusion may be avoided by distinguishing between them. A joint will is a testamentary instrument jointly signed by two or more persons. Mutual wills are the separate wills of two persons which are reciprocal in provisions. *Frazier* v. *Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003; *Campbell* v. *Dunkelberger,* 172 Iowa 385, 153 N. W. 56. A joint will containing reciprocal provisions was before this Court in the case of *Underwood* v. *Meyer,* 107 W. Va. 57, 146 S. E. 896. In that case the validity of the will was upheld and the reciprocal provisions therein were held to evidence the contractual agreement between the makers. In the case of *Wilson* v. *Starbuck,* 116 W. Va. 554, 182 S. E. 539, 102 A. L. R. 485, this Court held that the making of separate wills with reciprocal provisions was insufficient to establish the necessary contractual element, but further held that due execution thereof was evidence which, together with the circumstances shown was sufficient to establish a contractual arrangement between the makers, that the separate wills were, in effect, a joint will, and that upon the death of one maker the will of the survivor was inoperative. *In the Matter of Werkman,* 122 W. Va. 583, 13 S. E. 2d 73, wills similar to those in the *Starbuck* case were under consideration. It was there held that the burden of showing that the separate wills were joint wills rested on the persons who objected to the probate of the will of the survivor, and that the showing made therein was insufficient.

In this proceeding we are confronted with the usual

and controlling question: What was the intention of Frank Reed as to the testamentary disposition of his property? In ascertaining that intention we refrain from a construction of Reed's will as the language thereof is clear and admits of no construction, but the lack of ambiguity therein does not preclude an inquiry whether his will executed on October 5, 1928, remained in force after his wife's death. This inquiry calls for a discussion of the circumstances surrounding the execution of the wills of Frank and Lillian Reed, the contents thereof, and the testimony of the attorney-at-law who drafted the will.

As hereinbefore indicated the wills were written and signed at the same time and attested by the same witnesses. The testator and testatrix knew the provisions of each other's will. The stepchildren and children were bequeathed the same amounts in the respective wills. The last sentence of the residuary clause in each will is significant of the intention animating Lillian Reed and Frank Reed in the execution of their wills, the right of sale, use and disposition in any manner desired by the taker being expressly therein given. The survivor took the property devised and bequeathed to him with all the usual incidents of unqualified ownership, which militates against a restraint of alienation and is indicative of an intent on the part of Reed and his wife to vest an unconditional estate in the survivor, which intent is inconsistent with a purpose to allow the will of the survivor to remain as an effective testamentary disposition of survivor's estate.

In addition we have the testimony of the draftsman of the will, who says that it was the desire of Reed and his wife that all the property should pass to the survivor, except the small legacies, and that the wills were made in accordance with "a mutual understanding and agreement". It is true that the draftsman testified further that he did not think it was contemplated by the husband and wife that the death of one would render inoperative the will of the other. But analysis of the question and answer by which the testimony last mentioned was elicited shows

that it was the opinion of the witness as to what the Reeds were thinking when they signed their wills. Nothing appears in the record before us whereon the opinion of the witness is grounded, and we regard such opinion of little probative value as to the intent of the testators.

The record herein is devoid of any showing that Frank Reed had a greater regard for his daughter June than for his other children, and it appears that Lillian Reed also desired that her children and her stepchildren share equally in her estate. This circumstance is indicative that the husband and wife desired an equitable distribution of their estates.

We are of the opinion that the parties opposing probate have shown by undisputed evidence there was an agreement to execute mutual and reciprocal wills with the sole intent and purpose that the property of the first to die would be vested in the survivor unconditionally without restraint as to the disposition thereof.

A consideration of the mutual provisions of the will, the circumstances in which they were drafted, signed and attested, the knowledge of the contents thereof possessed by Reed and his wife, the execution of the wills conformable to a mutual agreement, and the express desire of the husband and wife that their property go to the survivor, leads to the conclusion that their only purpose and intent was to make the survivor the sole beneficiary of the one dying first, which being accomplished and effectuated by the death of Lillian Reed and the probate of her will, the will of Frank Reed was no longer operative as a testamentary disposition of property. *Wilson* v. *Starbuck, supra.* The contractual arrangement between Frank and Lillian Reed to make mutual and reciprocal wills being established by parol evidence, and the will of Lillian Reed having become effective on her demise, there was a full performance of the agreement and the statute of frauds is inapplicable. *Wilson* v. *Starbuck, supra.*

We therefore reverse the judgment of the Circuit Court of Ohio County, set aside the order probating the will of

Frank Reed, and remand the cause to that court for further proceedings in accordance with this opinion.

*Reversed and remanded.*

KENNA, JUDGE, concurring:

I agree with the conclusion reached by the majority of the Court, because I believe that the surrounding circumstances indicate quite clearly that Mr. and Mrs. Reed entered into a contractual understanding that they would execute mutual wills which would provide that the survivor would receive the entire property of the first to die. I do not believe that the reciprocal provisions of mutual wills alone are sufficient to establish the contract between the testators. I do believe, however, that it takes very little primary proof coupled therewith to place mutual wills in the same legal category as a joint will. If that be so, with the contract established, the death of the first to die and the probate of his will constitute full performance of the contract and render inoperative the will of the survivor made in compliance with the understanding that has already been fully discharged and its purpose fully accomplished, i. e., the surviving maker has then become fully vested with the property of the first to die. Otherwise a result is reached that plainly exceeds and possibly opposes the actual joint purpose of the two makers, namely, the heirs and distributees of the first to die step in to the exclusion of those of the survivor, and acquire the entire estate of both, not having been beneficially named in either will. If the will of the survivor does not become inoperative the only way that his immediate kin can be recognized by his bounty is by a violation of his contractual understanding. This, I believe, the law does not contemplate. However, I do not believe that this result rests upon the intention of the testators, or either, of them in the execution of their testamentary papers. I believe it must be a mutual purpose based upon contract shown, if not by recitals in the wills, then by some primary evidence extraneous of the exclusive pro-

visions of the wills themselves, and buttressed by reciprocal provisions of the two instruments. In this instance I believe that the testimony of the scrivener is sufficient, if his plainly improper testimony regarding his opinions and conclusions is not considered.

The nominal bequests of both Mr. and Mrs. Reed, I believe do not affect the legal situation in the least because their only purpose is to establish that the legatees named are not pretermitted. I therefore think that it is unnecessary to consider them.

Fox, Judge, dissenting:

As pointed out in the majority opinion, the effect of the Court's decision herein is to divide the estate of Frank Reed among his four children, rather than to vest the same in one of said children by the probate of his will. Naturally, I would like to be able to concur in that result, but I am unable to do so for the reason that, in my opinion, there has not been such a showing as warrants the holding of the Court that the wills of Frank Reed and Lillian Reed were, in effect, a joint will, and that the death of one of the testators made inoperative the will of the survivor.

In *Wilson* v. *Starbuck,* 116 W. Va. 554, 182 S. E. 539, 102 A. L. R. 485, we held that the making of separate wills with reciprocal provisions was insufficient to establish the contractual element necessary to establish them as a joint will, although treating that fact as evidentiary. In that case other evidence and circumstances convinced the Court that the parties intended the wills to have the effect of a joint will, and the will of the survivor was held inoperative, and not allowed to be probated. In the *Werkman* case 122 W. Va. 583, 13 S. E. 2d 73, we followed the principle announced in the *Starbuck* case, but held that the evidence did not establish a contract on the part of the testators to have their wills treated as a joint will, and the will of the survivor was admitted to probate.

I do not believe that the evidence and circumstances in

this case warrant the holding of the majority that there was a contract or understanding on the part of the Reeds that their mutual wills were to be treated as a joint will, and that the death of one testator would make inoperative, and not subject to probate, the will of the survivor. True, they agreed to make mutual wills, and they carried out that agreement at the same time, through the services of the same attorney, and before the same witnesses. That, to my mind, was the full extent of the agreement between them, and, in my opinion, the testimony of the attorney who prepared the wills sustains that view. The wills, with other established facts, show an agreement to execute mutual wills. But, say the *Starbuck* and *Werkman* cases, that is not enough. Additional evidence or circumstances must be produced or developed before such mutual wills can be treated as a joint will. I think such evidence is wholly lacking.

We only create confusion and uncertainty when we announce principles of law, and then fail to apply them to particular cases.

I would affirm the judgment of the trial court.