ESTATE OF ROBERT ABRUZZINO, WILLIAM ABRUZZINO, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 536–72. Filed November 26, 1973.

*Gary G. Markham,* for the petitioner.
*Andrew M. Winkler,* for the respondent.

OPINION

TIETJENS, *Judge:* The Commissioner determined a deficiency of $28,796.12 in the Federal estate tax of Robert Abruzzino and an addition of $1,439.80 to that tax under section 6651(a).[1]

Certain concessions have been made by both parties so that the only question remaining for decision is whether the estate is entitled to a marital deduction under section 2056 for the value of the interest in real estate and stock in Community Super Markets, Inc., passing to Barbara Abruzzino (hereafter Barbara) pursuant to the terms of the joint last will and testament of Barbara and Robert Abruzzino (hereafter decedent).

This case was fully stipulated pursuant to Rule 30, Tax Court Rules of Practice. The facts which we deem necessary for decision will be referred to below.

Decedent died testate at the age of 69 on December 9, 1967, a resident of Sutton, W. Va. He was survived by his wife, Barbara, two daughters, and a son, William Abruzzino, who was nominated and appointed executor of the decedent's estate and who resided in Gassaway, W. Va., at the time of the filing of the petition in this proceeding.

The Federal estate tax return for decedent's estate was filed with the district director of internal revenue, Parkersburg, W. Va.

On December 14, 1967, a joint will, executed by Barbara and decedent on December 20, 1963, was admitted to probate in Braxton County Court, Sutton, W. Va., as the last will and testament of decedent. That will contains the following pertinent provisions:

LAST WILL AND TESTAMENT OF ROBERT ABRUZZINO AND BARBARA ABRUZZINO, HUSBAND AND WIFE, RESPECTIVELY

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.

We, Robert Abruzzino and Barbara Abruzzino, husband and wife, respectively, of the Town of Cowen, County of Webster, and State of West Virginia, being of sound mind and disposing memory and free from any undue influence, do hereby make, publish and declare this to be, jointly as well as severally, our last will and testament, thereby revoking all former wills which we or either of us may have made.

FIRST: The one of us first dying directs that his or her just debts and funeral expenses be first paid by the personal representative hereinafter named.

SECOND: In case my husband, Robert Abruzzino, survive me, I Barbara Abruzzino, give, devise and bequeath to my husband, Robert Abruzzino, all property (real, personal and mixed) of whatever kind and description and wherever located, of which I may die seized or possessed, and I hereby nominate and appoint my husband, Robert Abruzzino, executor of my estate and of this my last will and testament with full power and authority to execute the same according to its true intent and meaning and to serve without bond.

THIRD: In case my wife, Barbara Abruzzino, survive me, I, Robert Abruzzino, hereby give, devise and bequeath to my son William Abruzzino forty percent (40%) of my stock in Community Super Markets, Inc.; I give, devise and bequeath to my two daughters, Wilma Virginia Talerico and Frances Rosano, the sum of five dollars ($5.00) each; and I give, devise and bequeath to my wife, Barbara Abruzzino, all the balance and residue of all property (real, personal and mixed) of whatever kind and description and wherever located, of which I may die seized or possessed; and I hereby nominate and appoint my son, William Abruzzino, as executor of my estate and of this my last will and testament with full power and authority to execute the same according to its true intent and meaning and to serve without bond.

FOURTH: In case of our simultaneous death or in case it is not known which one of us survived the other, then it shall be presumed that Robert Abruzzino survived Barbara Abruzzino. In case Barbara Abruzzino survive, she agrees not to dispose of the real estate or the stock in Community Super Markets, Inc., except as provided in the will of the survivor set out below.

FIFTH: The survivor of us, after payment of his or her just debts and funeral expenses, gives, devises and bequeaths unto our two daughters, Wilma Virginia Talerico and Frances Rosano, the sum of five dollars ($5.00) each; and the survivor of us gives, devises and bequeaths all the balance and residue of all property (real, personal and mixed) of whatever kind and description and wherever located of which the survivor of us may die seized or possessed to our son, William Abruzzino.

The Commissioner determined that decedent's estate was not entitled to a marital deduction for the value of the real estate and stock in Community Super Markets, Inc., devised and bequeathed to Barbara. He argues that, because Barbara is contractually bound to hold the real estate and stock for her life and to give them to her son at her death, her interests are terminable and not deductible under section 2056(b)(1). The Commissioner relies on *Estate of Edward N. Opal*, 54 T.C. 154 (1970), affd. 450 F. 2d 1085 (C.A. 2, 1971).

Petitioner contends that Barbara is not contractually bound to retain the real estate and stock and give, devise, and bequeath them to her son. Petitioner argues that, even if Barbara is bound to give

the residue of her estate to her son, our holding in *Estate of James Mead Vermilya*, 41 T.C. 226 (1963), allows the estate to deduct the value of the real estate and stock.

Petitioner and the Commissioner recognize the necessity of looking to the law of West Virginia to determine the nature of Barbara's interests in the real estate and stock. *Estate of Edward N. Opal, supra* at 157; *Estate of James Mead Vermilya, supra* at 230.

The Supreme Court of Appeals of West Virginia has held that a joint will or mutual wills may represent a contract which entitles its beneficiaries to its enforcement in equity once the survivor has accepted benefits under the will of the first to die. See, for example, *Underwood* v. *Myer*, 107 W. Va. 57, 146 S.E. 896 (1929); *Turner* v. *Theiss*, 129 W. Va. 23, 38 S.E. 2d 369 (1946). The Supreme Court of Appeals follows a rule attributed to *Underwood* v. *Myer, supra*, that "reciprocal provisions of * * * [a joint] will prima facie evidence a contractual relationship between the makers." *Wilson* v. *Starbuck*, 116 W. Va. 554, 182 S.E. 539, 540 (1935).[2] In *Wilson* v. *Starbuck, supra*, the rationale of the *Underwood* rule was explained (182 S.E. at 540:

The reasoning upon which this holding is based seems to be that the fact of execution of a joint will is of itself proof positive that both of the parties had full knowledge of the terms and provisions of the will, that the reciprocal dispositions show a consideration moving from each to the other, and hence that it must be supposed that they entered into the agreement in a contractual sense. * * *

Considering the reasoning on which the *Underwood* rule is based, we believe that the provisions of the joint will of Barbara and decedent are sufficiently reciprocal for us to conclude that those provisions contractually bind Barbara after decedent's death. The joint will is "proof positive" that both Barbara and decedent had full knowledge of its terms. Although not strictly reciprocal,[3] the dispositions show "a consideration moving from" decedent to Barbara. Accordingly, we are convinced that a West Virginia court would hold that Barbara and decedent entered into an agreement "in a contractual sense" since the fully stipulated record contains nothing to disprove the prima facie contract established by the will.

---

[2] In *Wilson* v. *Starbuck*, the Supreme Court of Appeals held that, under certain circumstances, reciprocal provisions in mutual wills have the same effect as those in a joint will.

[3] The will is not strictly reciprocal. Under art. Second, Barbara would have given decedent all her property remaining after payment of her just debts and funeral expenses. On the other hand, under art. Third, the decedent gave Barbara the residue of his estate after payment of his just debts and funeral expenses and after gifts of $10 and 40 percent of his stock in Community Super Markets, Inc., to his children. But there can be no question of the sufficiency of that residue to serve as consideration for a contract since the parties have stipulated that decedent's stock in Community Super Markets, Inc., was worth $182,752.

The language of the second sentence of article Fourth supports our conclusion that the provisions of the will are contractually binding. That sentence states: "In case Barbara Abruzzino survive, she *agrees* not to dispose of the real estate or the stock in Community Super Markets, Inc., except as provided in the will of the survivor set out below." (Emphasis supplied.) We believe that the language of that sentence indicates a contract. See *In Re Reed's Estate*, 125 W. Va. 555, 26 S.E. 2d 222, 224 (1943), where testimony of a "mutual understanding and agreement" was used to bolster the court's decision that the parties had intended a contractual arrangement.

Petitioner argues that the second sentence of article Fourth is binding only in the event of the simultaneous death of Barbara and decedent and, since they did not die simultaneously, that sentence never became operative. Such an interpretation of the will leads to contradiction, for, if in the event of simultaneous death decedent is presumed to have survived under the first sentence of article Fourth, the provisions of the second sentence, conditioned on Barbara's survival, would never operate.

Numerous statements of the West Virginia Supreme Court of Appeals require us to construe the will in such a way that it does not contradict itself. See, for example, *Wise* v. *Hinegardner*, 97 W. Va. 587, 125 S.E. 579, 582 (1924), where the court said:

A will should not be read so as to contradict itself. If the apparent contradiction can be harmonized or reconciled, the courts should do so, deducing a consistent interpretation from all of the words and clauses used. * * *

Also see *Weiss* v. *Soto*, 142 W. Va. 783, 98 S.E. 2d 727 (1957); *Davis Trust Co.* v. *Elkins*, 114 W. Va. 742, 175 S.E. 611 (1934).

Accordingly, we construe the second sentence of article Fourth as restricting Barbara's disposition of the real estate and stock whenever she received that real estate and stock by surviving the decedent. We note that that sentence logically precedes article Fifth which gives the terms of the disposition.

Petitioner asserts that article Third gave Barbara a "fee simple absolute, a perfect estate under the law," and that the language of article Fourth cannot be applied to limit that estate. He cites two cases, *Moore* v. *Holbrook*, 175 Va. 471, 9 S.E. 2d 447 (1940), and *Wooddell* v. *Frye*, 144 W. Va. 755, 110 S.E. 2d 916 (1959), as authority for his assertion. In *Moore* v. *Holbrook*, the Supreme Court of Appeals of Virginia considered a will which contained the following pertinent provisions (9 S.E. 2d at 448):

After all my just debts are paid, I will give and bequeath all my property both real and personal to my beloved husband * * *. He is to dispose of said property as he sees fit—If he chooses to sell it he may do so, in order he may be able to use

it for his comfort. Should there be any thing left after his death I desire it to be given to the cemetery for the upkeep of our lot. * * *

The court held that the testatrix had given her husband a fee simple and, therefore, that the gift to the cemetery was void. The court believed that the husband's power to dispose of the estate indicated the testatrix's intent to create a fee simple. The court found ambiguous the language making a gift to the cemetery, for the court could not ascertain from the will how much of her estate the testatrix wanted given to the cemetery. The court concluded (9 S.E. 2d at 450) : "If a prior estate in fee is to be cut down to a life estate or taken away altogether by subsequent language it must be by express words or by compelling implication."

In *Wooddell* v. *Frye* (110 S.E. 2d at 918), property was "to be [testator's wife's] absolutely." The testator directed that after the death of his wife, the property should go to his children. The Supreme Court of Appeals of West Virginia held that the wife received a fee simple absolute because (110 S.E. 2d at 920) :

a gift in fee simple, unequivocally made in one clause of a will, can not be taken away, limited or diminished by a subsequent clause, except by provisions which are equally as clear and decisive as the words of donation. * * *

Neither *Wooddell* v. *Frye* nor *Moore* v. *Holbrook* controls our decision. *Wooddell* involved an unambiguous fee simple absolute and *Moore* involved an ambiguous gift following a fee simple. In article Third, decedent gave Barbara "all the balance and residue of all property." That gift contains no language indicating the nature of the fee and cannot be described as "a gift in fee simple, unequivocally made." On the other hand, article Fourth expresses with unmistakable clarity, an intent that Barbara may "not * * * dispose of the real estate or the stock * * * except as provided" in article Fifth.

More significantly, neither *Wooddell* nor *Holbrook* involved a contractual agreement evidenced by a joint will or by mutual wills. In *Turner* v. *Theiss, supra,* the Supreme Court of Appeals of West Virginia answered an argument similar to petitioner's (38 S.E. 2d at 375–376) :

Appellant contends that the third clause of the M. H. Willis will amounts to a limitation over to third parties, and, since it conflicts with the fee simple devises and the bequests of the second clause of said will, it is void. Cases cited would seem to sustain this contention, but in such cases the Court was considering the construction of one will having conflicting provisions. However, here we are not construing the effect of a single will, but enforcing an agreement under the obvious terms of which the third clause of the will was intended to be supplementary to the second clause, and no conflict exists. To approve and uphold an avoidance of the third clause of the will would amount to an avoidance of the testamentary agreement, which, in equity, we cannot do.

That court's answer necessarily controls our own and leads to our conclusion that the joint will of Barbara and decedent requires Bar-

bara to retain the real estate and the stock and to dispose of it only in accordance with article Fifth.

Since we have concluded that Barbara is contractually bound to hold the real estate and stock for her life and to give it to her son at her death, our decision in *Estate of Edward N. Opal, supra,* requires us to hold that Barbara's interests in the real estate and stock are terminable. See also *Estate of Saul Krampf,* 56 T.C. 293 (1971), affirmed per curiam 464 F. 2d 1398 (C.A. 3, 1972).

Petitioner argues that our decision in *Estate of James Mead Vermilya, supra,* requires us to hold that the value of the stock and the real estate qualifies for the marital deduction. In *Opal* (54 T.C. at 165), we said of *Vermilya:*

That case was decided under Minnesota law and we held that the will there in issue granted "a fee simple absolute title" (an absolute estate) to the surviving spouse. The will under consideration in the instant case does have specific contractual language, and the New York law is clear that a contract does exist and that the interest of Mae [the surviving spouse] in such property is *not* absolute. * * *

Similarly, West Virginia law is clear that a contract does exist and that Barbara's interests in the stock and in the real estate are not absolute.

Further, our holding in *Vermilya* was limited to property "subject only to a general promise to leave all the property owned by [the survivor] at her death in the manner provided in the will." (41 T.C. at 233.) We said (41 T.C. at 232), "Such property as the promisor has at any time during his lifetime may be used up or conveyed away by the time the promisor is ultimately required to perform." However, by the terms of article Fourth of the joint will of Barbara and decedent, Barbara is required to hold the real estate and stock until her death. Our reasoning in *Vermilya* is clearly inapplicable.

Accordingly, we hold that Barbara holds terminable interests in the real estate and stock and that those interests do not qualify for the marital deduction.

*Decision will be entered under Rule 50.*